**Louis A. SABATINO, as Ancillary Administrator of the Estate of Jose Juan D'Agostino, Deceased, Appellant,**

v.

**CURTISS NATIONAL BANK OF MIAMI SPRINGS, Appellee.**

No. 26367.

United States Court of Appeals Fifth Circuit.

Sept. 3, 1969.

Louis A. Sabatino, Miami, Fla., for appellant.

Herbert Stettin, Feibelman, Friedman, Hyman & Britton, Miami, Fla., for appellee.

Before THORNBERRY and AINS-WORTH, Circuit Judges, and DAW-KINS, District Judge.

THORNBERRY, Circuit Judge:

This is an appeal from a Florida diversity action to recover $18,750 paid by the appellee bank out of a checking account belonging to Jose Juan D'Agostino, who is now deceased. Mr. D'Agostino's estate, the appellant here, alleges that the sum was wrongfully delivered to an unknown payee. The district court refused so to find, however, and rendered judgment for the bank. We remand the case for a new trial because of error in the exclusion of evidence.

The facts shown by the record are complex and inconclusive. The evidence seems to indicate that a check drawn on Mr. D'Agostino's account (but not written by him, appellant asserts) was presented at the bank on or about February 1, 1967, and was paid. A bank officer with considerable experience and training in handwriting identification testified that he compared the signature on the check with the decedent's signature card at the bank and that he was satisfied the signatures matched. Virtually nothing is known about the man who cashed the check except a general description and his stated intention to embark for South America.

Upon learning of the charge against his account, the decedent, who was a citizen and resident of Argentina, complained to the bank by letter. For some reason, this letter was never offered into evidence. When it appeared no satisfactory disposition of the matter was imminent, the decedent, who was ill at the time, dispatched two brothers to visit the bank personally. After the brothers' protest, when still no explanation appeared forthcoming from the bank except that a check had been presented against the account and that the bank had paid it, the testimony is unanimous that the brothers grew very excited. These facts, together with the decedent's filing of this suit before his death alleging wrongful payment of the funds, constitute virtually the only competent evidence received to show that the decedent did not write the check.

Normally, the bank's own procedures would have provided a way to verify the check, but in this case a number of unusual things happened to prevent verification. The check was properly recorded on the teller's adding machine tape, and his total for the day balanced. It was also properly doublechecked by the proof department. Somehow, however, the check was erroneously posted by the bookkeeping department, and this error necessitated additional handling. The next step after bookkeeping should have been microfilming. It had been the custom of the Curtiss National Bank for at least four years before this litigation to make a microfilm copy of every check that crossed its books, for its protection and the protection of its customers. In this case, however, although other checks paid that day appeared on the microfilm records in regular order, the check at issue here, for some mysterious reason, did not. The bank searched extensively and was unable to find a copy of it. Moreover, the bank usually kept a "high item list" upon which it entered all checks for over $5,000. The check should have appeared on this list, but no list was found for the day.

After microfilming, the check was supposed to go into storage to await the preparation of monthly statements. Finally, after the preparation of the decedent's monthly statement, the check should have been inserted by hand into an envelope for mailing with the statement. As the last step before mailing, it was customary procedure for an employee to count the checks sent with each statement to be sure that the number sent was the same as the number appearing on the statement. The check at issue here, however, is presently missing, and appellant claims it was never returned to the decedent. Without the check, or a copy of it, or the testimony of the decedent, appellant was hard put to make out a case. The trial court found that the

decedent had written the check and that the bank had paid it properly.

This appeal raises three points, all of which the trial court resolved adversely to appellant. Appellant contends that the court erroneously excluded certain evidence he offered, that the bank's failure to microfilm the check or have a high item list should have been held negligence or breach of contract,[1] and that the court's finding that the decedent wrote the check is clearly erroneous. Since we agree with appellant's first argument, and find the court's exclusion of evidence serious enough to necessitate a new trial, we do not reach appellant's other two issues.

■ One of the items that appellant sought to introduce into evidence was a small, blue-covered book in which the decedent recorded checks and reconciled his statements on this account. The book thus contained original journal entries, made by the decedent himself contemporaneously with the writing of checks and analysis of statements. As a foundation for offering this book, appellant introduced testimony of the decedent's brother, who knew the handwriting of the decedent well and had observed the decedent's use of the book on numerous occasions. This testimony was to the effect that whenever the decedent wrote a check on this account, he recorded it in the book; that he recorded only checks written on his Curtiss National Bank account; and that he reconciled his statements with the record he kept. Appellant sought to show by this book that the decedent had not recorded a $18,750 check and hence had probably not written one. Conceivably, the book could also have furnished some evidence

that appellant did not receive any cancelled $18,750 check back from the bank. The trial judge, however, excluded the book because he found that it did not fit into the business records exception to the hearsay rule. His basis for this ruling, as he stated it, was primarily "the fact that the business record rule requires the testimony of someone who kept the books or had supervision over the books, at least had some general knowledge of the books. This is just a man whose brother kept books, and he saw him look at the book once in a while." We hold that this ruling was error and that it necessitates a new trial.

Rule 43(a), Fed.R.Civ.P., governs the admissibility of evidence in the federal courts. It states in part as follows:

All evidence shall be admitted which is admissible under the statutes of the United States, or under the rules of evidence heretofore applied in the courts of the United States on the hearing of suits in equity, or under the rules of evidence applied in the courts of general jurisdiction of the state in which the United States court is held. In any case, the statute or rule which favors the reception of the evidence governs and the evidence shall be presented according to the most convenient method prescribed in any of the statutes or rules to which reference is herein made.

Under this rule, there are three possible sources of authority for admissibility: federal statutes, decisions of the original federal courts sitting in equity, and state laws. When the checkbook was offered, and indeed throughout these proceedings, the parties argued this issue on the basis

---

1. Although we do not decide this issue, we do find it necessary to comment briefly on it. The Uniform Commercial Code went into effect in Florida on January 1, 1967, approximately a month before the transaction here at issue occurred. The parties did not, however, brief the case with reference to the Code. On remand, the issue of the bank's failure to follow its microfilming practices as negligence or breach of contract should be considered in light of Fla.Stat.Ann. § 674.4–103 (1966) (Uniform Commercial Code—Bank Deposits and Collections) and comments thereto, as well as general principles of contract and tort. With reference to some reciprocal duties of bank and customer, possibly codifying the duty of the bank to return statement and checks, see Fla.Stat.Ann. § 674.4–406 (1966).

of Florida law; and the trial judge understandably made his exclusionary ruling accordingly. Rule 43, however, does not allow us to confine our attention to evidence admissible under any single source, but requires us to use the most liberal rule dealing with the subject offered. In this case, we reach our decision without considering Florida rules of evidence.[2]

We find that the evidence sought to be introduced here was admissible under the Federal Business Records Act, 28 U.S.C. § 1732 (1966), the pertinent parts of which are set out in the footnote below.[3] The Act expressly provides that all circumstances, other than preparation in the regular course of business and within a reasonable time after the event, may affect the weight given the evidence, but do not affect its admissibility. The Act

does not require that the foundation testimony come from the one who kept the books or had supervision over them.[4] *See, e. g.,* United States v. Grow, 4th Cir. 1968, 394 F.2d 182, 205; Bisno v. United States, 9th Cir. 1961, 299 F.2d 711, 718–719. All that must be established is that the record was kept in the regular course of business.

■ We think that a sufficient foundation was laid in this case. The check record kept by the decedent was used in his personal business, to be sure; but the indications are strong that the statute was nonetheless intended to include it. We begin consideration of this question with the proposition that federal law favors the admission of probative evidence. In fact, "[t]he Federal Rules and practice favor admission of evidence rather than exclusion if the proffered

2. We take the case as we find it. Appellant did not specifically plead any statutory basis for his offer of the checkbook, but merely answered in the affirmative when asked by the trial court whether he was offering it as a business record. In view of our decision, we need not decide whether the offer suffices to invoke any other rule of admissibility, or whether any other rule, once invoked, would actually make the book admissible. In particular, we do not consider the applicability of Fla.Stat.Ann. § 92.37 (1966), which states as follows:

92.37 *Books of account as evidence*

In all suits the shop books and books of account of either party, in which the charges and entries shall have been originally made, shall be admissible in evidence in favor of such party; but the credibility of such evidence shall be judged of by the jury in case of a trial at law, and by the court in case of a hearing in equity.

On its face, this section seems to cover the case, but we hesitate to rule whether the decedent's checkbook is a "book of account" of a "party" under the Florida decisions without a concrete offer, without a ruling by the trial court, and without briefs. For a different reason, we do not decide whether the Florida Uniform Business Records as Evidence Act, Fla.Stat.Ann. § 92.36 (1966) covers this case (the trial court found that it did not). Section 92.36 is properly before us, but we find the offer sufficient also to invoke the Federal Business Records Act,

under which we find the checkbook admissible.

3. § 1732. *Record made in regular course of business; photographic copies*

(a) In any court of the United States and in any court established by Act of Congress, any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occurrence, or event, if made in regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter.

All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility.

The term "business", as used in this section, includes business, profession, occupation, and calling of every kind.

4. The Federal Act is worded differently in this respect from the Uniform Business Records as Evidence Act, which is in force in Florida. Fla.Stat.Ann. § 92.36 (1966). The Uniform Act requires that the foundation testimony come from "the custodian [of the records] or other qualified witness." The district court's ruling would seem far more appropriate in the context of this language.

evidence has any probative value at all." Aluminum Co. of America v. Sperry Prods. Inc., 6th Cir. 1960, 285 F.2d 911. Doubts "must be resolved in favor of admissibility." Erie R. Co. v. Lade, 6th Cir. 1954, 209 F.2d 948, 951. The federal courts have been particularly liberal in looking to the policies behind the hearsay rule before excluding hearsay evidence. There are two basic tests for all exceptions to the hearsay rule: (1) The evidence must be necessary to a proper consideration of the case and (2) it must exhibit an intrinsic probability of trustworthiness. *See* C. McCormick, Evidence § 281 (1954); 5 J. Wigmore, Evidence §§ 1421–22 (1940). This Court, in fact, has gone so far as to hold that evidence that meets these two tests ought to be admissible under the liberal federal practice even though within no recognized exception to the hearsay rule. Dallas County v. Commercial Union Assur. Co., 5th Cir. 1961, 286 F.2d 388 (newspaper clipping admissible solely because necessary and trustworthy). In the case at bar, the necessity for the evidence is clear and compelling. The only man who could have given the information it contains is dead, and that information goes to the heart of the case. As to trustworthiness, the book was kept according to a regular procedure of entries made contemporaneously with the events it recorded. A man has a direct financial interest in keeping accurate accounts in his personal business. He relies on them to tell him how much he has spent and how much he has left in exactly the same way as does a banking corporation. Mistakes are likely to be relatively infrequent and can be corrected against bank statements.

Although we have found no federal cases dealing specifically with check rec-

ords used in personal business, the cases decided, especially in light of the above considerations, make this evidence admissible as a business record. The cases indicate that private records, if kept regularly and if incidental to some personal business pursuit, are competent evidence under § 1732. See Aluminum Co. of America v. Sperry Prods., Inc., 6th Cir. 1960, 285 F.2d 911 (holographic notebook of inventor admissible in patent infringement suit); Buckley v. Altheimer, 7th Cir. 1945, 152 F.2d 502 (private diary excluded, but with dictum to the effect that it would have been admissible if in the form of an account book).[5] Also, we may use the decisions of the states under statutes similar to the federal Act as a guide to its interpretation. One law review writer has stated that "[u]nder the more modern practice private financial records have been held to be admissible." Laughlin, Business Records and the Like, 46 Iowa L.Rev. 276, 287–288 (1961); see also McCary v. McMorris, 1957, 265 Ala. 493, 92 So.2d 319; Valentine v. Valentine, 1948, 31 Wash.2d 650, 198 P.2d 494; In re Tracy' Estate, Iowa 1941, 299 N.W. 884; C. McCormick, Evidence § 283 n. 5 (1954); 5 J. Wigmore, Evidence § 1523 & n. 2. (1940) (criticizing as "thoroughly unsound" a decision excluding a record merely because privately kept); *Contra, e. g.*, In re Cummins' Estate, 1939, 226 Iowa 1207, 286 N.W. 409. The Advisory Committee that drafted the new proposed federal rules of evidence, under which the book offered here would clearly be admissible, states that its rule is intended to effectuate present practice employing "a definition of 'business' far broader than its ordinary accepted meaning." [6]

Indeed, consideration of the items that the federal courts have held are *not* busi-

---

5. There is testimony in the record of the case at bar to the effect that the decedent used this checking account to some extent for the business of purchasing horses, but we do not rely upon this fact because we do not think that it affects the trustworthiness of the checkbook at all. The motive to keep accurate accounts is similar whether the records are kept for spe-

cific business or general business. Moreover, it is settled that the business "need not be commercial." C. McCormick, Evidence § 283 (1954).

6. The pertinent parts of the proposed rules make the following items admissible:
   (6) RECORDS OF REGULARLY CONDUCTED ACTIVITY. A memorandum, report, record, or data compila-

ness records indicates that the language of § 1732 must be read carefully according to its purposes, which make it a far more complex rule than its words would indicate. As long ago as 1942, it was recognized that the words "regular course of any business" were "a short-hand expression or symbol for a doctrine, the essence of which is the reliance on records where the circumstances in which they were made furnish sufficient checks against inducement to misstate to make them trustworthy." Hoffman v. Palmer, 2d Cir. 1942, 129 F.2d 976, affirmed, 318 U.S. 109, 63 S.Ct. 477, 97 L.Ed. 645. In the *Palmer* case, a railroad accident report was excluded from evidence because it had been prepared with a view to litigation rather than pursuant to the actual business of railroading and hence was considered untrustworthy. *See also* Hartzog v. United States, 4th Cir. 1954, 217 F.2d 706.

■ Thus the decisions *excluding* offered items indicate that the main reason for the statutory language "in regular course of any business" is to provide a check on trustworthiness, in that (1) the records must be kept pursuant to some routine *procedure* designed to assure their accuracy, (2) they must be created for *motives* that would tend to assure accuracy (preparation for litigation, for example, is not such a motive), and (3) they must not themselves be mere cumulations of hearsay or uninformed opinion. *See* Laughlin, *supra,* 46 Iowa L.Rev.

at 286–291; Note, Revised Business Entry Statutes: Theory and Practice, 48 Colum.L.Rev. 920, 923–929 (1948). A check record, even if kept by an individual, clearly meets these tests of trustworthiness. It is a routinely entered (and routinely checked) record of fact, used to compute the funds remaining in one's account, which the maker would have no motive to falsify. We think that to exclude the checkbook offered here would thwart the remedial purposes of the federal Act, which was enacted in response to unduly restrictive business records practice and which has been liberally construed by the courts.

■ On remand, the district court should consider the journal entries in the decedent's check record, giving them such weight as is indicated by their source, appearance of regularity, corroboration with bank records, and other circumstances. It should consider the absence of any expected entries as some evidence that the facts calling for them did not exist, again with probative value according to the circumstances. Cf. Advisory Committee's Note, Preliminary Draft of Proposed Rules of Evidence for the United States District Courts and Magistrates, 46 F.R.D. 161, 346, 362 (1969); C. McCormick, Evidence § 289 (1954); 5 J. Wigmore, Evidence § 1531 (1940). Likewise, we think that ledger-type notes, if any, resulting from the decedent's procedures in reconciling his records with bank statements should be admitted, if regularly made in the ordi-

tion, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, all in the course of regularly conducted activity, as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

(7) ABSENCE OF ENTRY IN RECORDS OF REGULARLY CONDUCTED ACTIVITY. Evidence that a matter is not included in the memoranda, reports, records, or data compila-

tions in any form, of a regularly conducted activity, to prove the nonoccurrence or nonexistence of the matter, if the matter was of a kind of which a memorandum, report, record, or data compilation was regularly made and preserved.
*See Preliminary Draft of Proposed Rules of Evidence for the United States District Courts and Magistrates,* 46 F.R.D. 161, 346, 357–362 (1969). Although these rules are in preliminary draft form, and may not be accepted, we find their consonance with the result reached here to be of some persuasive value.

nary course of his personal business as distinguished from preparation for this litigation.

Reversed and remanded.