UNITED STATES of America,
Plaintiff-Appellee,

v.

Bohdan KOZIY, a/k/a Bogdanus Kosij,
a/k/a Bohdan Jozij,
Defendant-Appellant.

No. 82–5749.

United States Court of Appeals,
Eleventh Circuit.

Feb. 27, 1984.
Rehearing Denied April 2, 1984.

Philip Carlton, Jr., Thomas A. Wills, Miami, Fla., for defendant-appellant.

Kathleen Coleman, Trial Atty., Allan A. Ryan, Jr., Jovi Tenev, Dept. of Justice, Washington, D.C., Stanley Marcus, U.S. Atty., Miami, Fla., for plaintiff-appellee.

Before HENDERSON and HATCHETT, Circuit Judges, and JONES, Senior Circuit Judge.

HATCHETT, Circuit Judge:

The appellant, Bohdan Koziy, appeals an order of the United States District Court, 540 F.Supp. 25, for the Southern District of Florida, revoking his citizenship pursuant to 8 U.S.C.A. § 1451(a) which provides that citizenship must be revoked if it was illegally procured, or procured by concealment of a material fact or by willful misrepresentation.[1] After a review of the record, we find the district court committed no error and therefore, we affirm.

## FACTS

Before the outbreak of World War II, the Stanislau region was part of Poland. In 1939, Germany and Russia invaded the region and agreed to divide the territory; the Russians gained control of the Stanislau area. On June 22, 1941, Germany invaded Russia and the Germans occupied the region. The towns of Lisets and Stanislau lie within the Stanislau region.

From 1941 until its surrender in 1945, Germany attempted to annihilate the Jewish people residing within its occupied territories. The task of killing millions of Jewish people was so enormous it required the aid of the indigenous population. In the Stanislau region, the Ukranian Police aided the Germans in their task by guarding the Jewish ghetto in Stanislau and killing Jewish residents. They also aided the Germans in deporting the Jewish people to extermination camps.

Bohdan Koziy was born on February 23, 1923, in the town of Pukasiwci, located in the Stanislau region. From 1936 through 1939, Koziy attended various schools in the Stanislau region. In 1939, Koziy became involved in the Organization of Ukranian Nationalists (OUN) which was dedicated to the establishment of an independent Ukranian state. He remained active in the organization until 1944. In 1944, fleeing the Russian advance, Koziy and his family moved to Heide, Germany, where he worked as a farmer. After the Germans surrendered in 1945, the Koziys lived in various displaced persons camps. The Displaced Persons Commission (DPC) operated these camps to establish an orderly method of resettling World War II refugees. After the DPC interviewed Koziy, he entered the United States on December 17, 1949, under the Displaced Persons Act of 1948. On April 25, 1955, Koziy filed his application to file a petition for naturalization. On July 25, 1955, he filed a petition for naturalization and on February 9, 1956, Bohdan Koziy became a United States citizen.

On November 20, 1979, the United States brought this action pursuant to 8 U.S.C.A. § 1451(a), to revoke and set aside the order of the Supreme Court of New York, Oneida County, on February 9, 1956, admitting Koziy to United States citizenship. The United States also requested the cancellation of Koziy's certificate of naturalization. The United States alleged that Koziy had illegally procured his citizenship by conceal-

1. Title 8 U.S.C.A. § 1451(a) provides in pertinent part:

§ 1451. Revocation of naturalization—Concealment of material evidence; refusal to testify.

(a) It shall be the duty of the United States attorneys for the respective districts, upon affidavit showing good cause therefor, to institute proceedings in any court specified in subsection (a) of section 1421 of this title in the judicial district in which the naturalized citizen may reside at the time of bringing suit, for the purpose of revoking and setting aside the order admitting such person to citizenship and canceling the certificate of naturalization on the ground that such order and certificate of naturalization were illegally procured or were procured by concealment of a material fact or by willful misrepresentation . . . .

ment of a material fact or by willful misrepresentation by failing to disclose his involvement in the Ukranian police and the OUN. Koziy denied involvement in the Ukranian police and contended his actions in the OUN were insufficient to support revocation of his citizenship.

The district court agreed with the United States. It held Koziy's failure to reveal his activities in the Ukranian Police and the OUN made him ineligible to receive a visa under the Displaced Person's Act of 1948 (Act). Therefore, Koziy was unlawfully admitted to the United States and his citizenship was illegally procured. The failure to disclose his activities in the Ukranian Police and the OUN also provided the basis for the district court's ruling that Koziy had procured his citizenship by concealment of a material fact.

The district court found that the Ukranian Police and the OUN were organizations hostile to the United States. Koziy's affiliation with those organizations resulted in his ineligibility for a visa under section 13 of the Act which prohibits the issuance of a visa to anyone who was a "member of, or participated in, any movement hostile to the United States or the form of government of the United States."

The district court also found that Koziy assisted enemy forces and persecuted civilians thereby making him ineligible for a visa under section 2(b) of the Act. The Act declares that anyone who has "assisted the enemy in persecuting civil populations of countries ... or voluntarily assisted the enemy since the outbreak of the second world war in their operations against the United Nations" is of no concern to the Displaced Persons Commission. If the DPC was unconcerned with Koziy, he was ineligible for a visa under section 2(b).

The district court ruled that Koziy's failure to disclose his connections with the Ukranian Police and the OUN on his immigra-

tion forms made him ineligible for a visa under section 10 of the Act which precludes the issuance of a visa to any person "who shall willfully make a misrepresentation for the purpose of gaining admission into the United States." The district court also ruled Koziy lacked good moral character which is a prerequisite for admission into the United States under 8 U.S.C.A. § 1427(a)(3) by failing to reveal his wartime activities. Additionally, the district court revoked Koziy's citizenship pursuant to 8 U.S.C.A. § 1451(a) because his failure to disclose his connections with the Ukranian Police and the OUN resulted in his procuring citizenship by concealment of a material fact.

Koziy raises four issues on appeal. (1) Koziy contends the district court erred in finding he was a member of the Organization of Ukranian Nationalists (OUN) and the Ukranian Police. (2) Koziy argues the district court erred in excluding two defense witnesses whose names were not disclosed by his attorney within the time set in the court's pretrial order. (3) Koziy claims the district court violated the ex post facto clause and the due process clause by revoking his citizenship on the ground of illegal procurement. Koziy contends that at the time he obtained citizenship, the statutory provisions for denaturalization did not include illegal procurement, and therefore, the district court's reliance on illegal procurement as a basis for denaturalization violated the due process clause and the ex post facto clause. (4) Koziy argues the district court erred in admitting into evidence an anmeldung, an abmeldung, and an inimical list.[2]

I. The Trial Court's Revocation of Koziy's Citizenship Pursuant to 8 U.S.C.A. § 1451(a).

Title 8 U.S.C.A. § 1451(a) provides two methods for revocation of an individual's

---

**2.** An anmeldung was a document the Ukranian police utilized to apply for various types of insurance when beginning their job. An abmeldung is a form the Ukranian police used when leaving their job. The inimical list was a list the Displaced Persons Commission (the Commission which regulated the immigration of World War II refugees to the United States) compiled listing all organizations hostile to the United States. If a person seeking admission to the United States under the Displaced Persons Act was a member of any of the listed organizations, the Commission prohibited his admittance.

citizenship: (1) If the individual illegally procured his citizenship, or (2) if citizenship were procured by concealment of a material fact or wilful misrepresentation.

### a. Illegal Procurement of Citizenship

■ Citizenship is illegally procured if "some statutory requirement which is a condition precedent to naturalization is absent at the time the petition is granted." H.R.Rep. 1086, 87 Cong., 1st Sess. 39, reprinted in [1961] U.S.Code Cong. & Admn. News, 2950, 2983. *See also, Fedorenko v. United States,* 449 U.S. 490, 515, 101 S.Ct. 737, 751, 66 L.Ed.2d 686 (1981). Lawful admittance to the United States is a statutory condition precedent to naturalization. 8 U.S.C.A. § 1429. If Koziy were ineligible for a visa, he would be unlawfully admitted to the United States. The United States produced various witnesses to testify to Koziy's affiliations with the Ukranian Police and the OUN. Involvement with the Ukranian Police or the OUN would preclude Koziy from receiving a visa under the Displaced Persons Act of 1948.

The United States produced witnesses who testified they saw Bohdan Koziy in a Ukranian police uniform killing unarmed civilians in the town of Lisets. Josef-Waclaw Jablonski testified he saw Koziy at least once a week in a Ukranian police uniform. He also saw Koziy kill the Singer girl and members of the Kandler family. Jablonski stated that he was 100 percent positive that Koziy committed both acts. Anton Vatseb corroborated Jablonski's story. Vatseb testified he saw Koziy kill the Kandlers and the Singer girl. Vatseb also testified he was with Jablonski when Koziy shot the Singer girl. Vatseb stated that the Kandler family was shot in the same fashion as Jablonski had stated. Three witnesses, Anna Snigur, Maria Antoniva Il'kovs'ka, and Yosif Frankovich Il'kovs'kii, testified that they saw Koziy kill the Bredgolts's family while wearing a Ukranian police uniform.

The United States also produced two exhibits which corroborated the witnesses' testimony declaring that Koziy was a member of the Ukranian police force. The anmel-dung and the abmeldung, Ukranian police employment forms, both contained Koziy's signature. Each document represented Koziy's affiliation with the Ukranian police. Koziy, however, claims he was never employed in the Ukranian police force.

Koziy presented his testimony and the testimony of three witnesses to refute the government's contention that he was a member of the Ukranian police force. First, his wife testified and contended that Koziy was never a member of the Ukranian police force. Second, Wasyl Ostapiak, Koziy's father-in-law, and a resident of the town of Lisets during World War II, testified he never saw Koziy in a Ukranian police uniform. Mykola Ostatiak testified that he never saw Koziy in a Ukrainian police uniform. Koziy himself took the stand and declared he was never involved in the Ukranian police force. Koziy, however, did state that he wore the uniform of the Ukranian police force on a few occasions as a disguise to conceal his membership in the OUN. Koziy contends this evidence displays his non-affiliation with the Ukranian police force.

■ To prevail in a denaturalization proceeding, the government must prove its case by clear, convincing, and unequivocal evidence, and leave no issue in doubt. *Fedorenko v. United States,* 449 U.S. 490, 505, 101 S.Ct. 737, 746, 66 L.Ed.2d 686 (1981); *United States v. Chaunt,* 364 U.S. 350, 353, 81 S.Ct. 147, 149, 5 L.Ed.2d 120 (1966); *Schneiderman v. United States,* 320 U.S. 118, 125, 63 S.Ct. 1333, 1336, 87 L.Ed. 1796 (1943). The district court held that the government fulfilled its burden of showing Koziy's membership in the Ukranian police. It found that Koziy was ineligible for a visa under the Displaced Persons Act and was never lawfully admitted into the United States. The district court, therefore, held that Koziy had illegally procured his citizenship because he had failed to fulfill a statutory condition precedent to naturalization.

■ In reviewing factual findings of the district court, we are bound by the clearly erroneous standard of Fed.R.Civ.P.

52(a). *Inwood Laboratories v. Ives Laboratories,* 456 U.S. 844, 855, 102 S.Ct. 2182, 2188, 72 L.Ed.2d 606 (1982); *United States v. United States Gypsum Co.,* 333 U.S. 364, 394–95, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948); *Wilson v. Thompson,* 638 F.2d 799, 801 (5th Cir.1981). The district court's factual findings concerning Koziy's affiliation with the Ukranian police are not clearly erroneous.

■ The only issue concerning Koziy's affiliation with the OUN is whether the OUN was, at the time under consideration, hostile to the United States. Koziy testified that he was extensively involved with the OUN's activities during World War II. The United States presented the same witnesses who testified about Koziy's shooting innocent civilians to report about the OUN's hostility towards the United States. These witnesses testified that the OUN committed atrocities against Polish civilians who were United States allies. The United States also introduced a document which the Displaced Persons Commission formulated exhibiting all organizations considered hostile to the United States. The OUN was listed on it. The United States produced the resolution of the Second Congress of the OUN which exhibited the OUN's anti-semitic ideology. The government also displayed various applications for admission to the United States which the DPC denied because of the individuals' affiliations with the OUN.

To rebut the government's contention that the OUN was hostile to the United States, Koziy presented an expert witness on the OUN, Dr. Petro Murchuk. He testified that the OUN was never hostile to the United States.[3] Koziy also testified declaring that the OUN was never hostile to the United States. Koziy, however, stated that the OUN killed Russian partisans during World War II. The United States and Russia were allies during World War II.

The district court found that the government had fulfilled its burden of proof with respect to Koziy's involvement with the OUN and held that Koziy was ineligible for a visa, and therefore was never lawfully admitted into the United States. It ruled Koziy had illegally procured his citizenship. We fail to find the district court's factual findings regarding Koziy's affiliations with the OUN clearly erroneous. *Hamm v. Members of Board of Regents of the State of Florida,* 708 F.2d 647, 650 (11th Cir.1983); *Lincoln v. Board of Regents of the University System of Georgia,* 697 F.2d 928, 939 (11th Cir.1983).

■ Being of good moral character is another statutory condition precedent to naturalization. 8 U.S.C.A. § 1427(a)(3). A person who has given false testimony for the purpose of obtaining benefits under the immigration laws lacks good moral character. 8 U.S.C.A. § 1101(f)(6). The district court found Koziy had failed to reveal his wartime activities in his visa and naturalization applications, and therefore, lacked good moral character. The district court held Koziy had illegally procured his citizenship because he had failed to satisfy a statutory condition precedent to naturalization.

Unless the district court's factual findings are clearly erroneous, we are compelled to abide by them. *Hamm,* at 650; *Lincoln,* at 939. The district court's factual findings are not clearly erroneous. ·

b. Procurement of Citizenship by Concealment of a Material Fact or by Willful Misrepresentation

■ Under 8 U.S.C.A. § 1451(a), if naturalization is procured by concealment of a material fact or by willful misrepresentation, it must be revoked. In a denaturalization proceeding, concealed facts are material if either they would have warranted denial of citizenship if known, or if the disclosure might have led to an investigation into other facts warranting denial of citizenship. *United States v. Fedorenko,*

---

**3.** Murchuk's credibility as a witness must be analyzed in light of two letters he sent to the office of special investigations in the Department of Justice. In those letters, he claimed

that the Department of Justice's investigation into Koziy's past was a KGB-Jewish plot to destroy Ukranian Nationalists.

597 F.2d 946, 949–52 (5th Cir.1979), *aff'd Fedorenko v. United States,* 449 U.S. 490, 101 S.Ct. 737, 66 L.Ed.2d 686 (1981). The district court found that Koziy had failed to disclose his affiliation with the OUN in his application to file a petition for naturalization. It held that if he had disclosed his affiliation with the organization, it would have led to an investigation into other facts which might have warranted a denial of citizenship. The district court, therefore, held Koziy's naturalization was procured by a concealment of a material fact. The district court found that Koziy never disclosed his membership in the Ukranian Police force. It ruled that if he had disclosed his connection with the police force in his visa application, his application would have been rejected outright, or at the least, an investigation would have commenced which might have led to a denial of citizenship. His failure to disclose his affiliation with the police force, therefore, was a concealment of a material fact, and his naturalization was procured by concealment of a material fact. These findings are not clearly erroneous.

## II. Koziy's Constitutional Claims

■ Koziy contends that at the time he obtained citizenship, the statutory provisions for denaturalization failed to include illegal procurement. Koziy argues, therefore, that the district court's reliance on illegal procurement as a basis of denaturalization violated the due process clause of the fifth amendment and the ex post facto clause. Although Koziy is correct in contending that the statutory provisions for denaturalization did not include illegal procurement at the time he obtained citizenship, we find that the district court's utilization of illegal procurement as a basis for denaturalization did not violate Koziy's constitutional rights.

In *Johannessen v. United States,* 225 U.S. 227, 32 S.Ct. 613, 56 L.Ed. 1066 (1912), the Supreme Court was faced with a similar challenge in a denaturalization proceeding. When Johannessen was admitted to the United States, the statute did not include illegal procurement as a basis for denaturalization. Johannessen contended that the utilization of illegal procurement as a basis for denaturalizing him violated the ex post facto clause. The Court disagreed and declared the usage of illegal procurement did not violate Johannessen's constitutional rights. *Johannessen,* at 242–43, 32 S.Ct. at 617. The Court stated: "The act imposes no punishment upon an alien who has previously procured a certificate of citizenship by fraud or other illegal conduct. It simply deprives him of his ill-gotten privileges." *Johannessen,* at 242–43, 32 S.Ct. at 617.

In the present dispute, the government's utilization of illegal procurement as a basis for revoking Koziy's citizenship did not violate Koziy's constitutional rights. It only deprived Koziy of his ill gotten gains. The utilization of illegal procurement deprived Koziy of a privilege that was never rightfully his. *See Johannessen,* at 241–43, 32 S.Ct. at 616–617.

## III. The Court's Exclusion of Koziy's Witnesses

The district court set August 17, 1981, as a deadline for listing witnesses to be called at trial. Koziy failed to list two witnesses, O'Connor and Martin, by the deadline. The district court, therefore, prohibited the witnesses from testifying. Koziy contends that the district court abused its discretion in excluding his witnesses. The government argues the district court acted properly in excluding Koziy's witnesses.

■ A district court's order concerning the exclusion of witnesses will be upheld unless there has been a clear abuse of discretion. *Port Terminal and Warehousing v. John S. James Co.,* 695 F.2d 1328, 1334–35 (11th Cir.1983); *Keyes v. Lauga,* 635 F.2d 330, 334–35 (5th Cir.1981); *Calamia v. Spivey,* 632 F.2d 1235, 1237 (5th Cir.1980). In determining whether the district court abused its discretion in excluding witnesses, the reviewing court should take the following factors into account: (1) bad faith on part of the parties seeking to call the witnesses not listed in his pretrial memorandum, (2) ability of the party to have

discovered the witnesses early, (3) validity of the excuse offered by the party, (4) willfulness of the party's failure to comply with the court's order, (5) party's intent to mislead/confuse his adversary, and (6) importance of excluded testimony. *Myers v. Pennypack Woods Home Ownership Association,* 559 F.2d 894, 904–905 (3d Cir.1977).

After reviewing each factor listed in *Pennypack* as it relates to this case, we find that the district court did not abuse its discretion in excluding Koziy's two witnesses. Koziy failed to inform the court that he desired to call O'Connor, a Displaced Persons Commission expert, until September 16, 1981. Koziy, however, knew that the government was claiming that he violated the Displaced Persons Act at the time of the filing of the complaint, 1979. Moreover, when Koziy was deposed on November, 1980, he was questioned about his application to the Displaced Persons Commission. Koziy, therefore, knew as early as 1979 that the Displaced Persons Act was at issue. Koziy had the ability to call O'Connor at any point after the filing of the complaint. Koziy offered no excuse for his failure to call O'Connor prior to the court's deadline and therefore, Koziy willfully failed to comply with the court's order. The government also lacked the opportunity to depose O'Connor. The district court, therefore, did not abuse its discretion in precluding O'Connor from testifying.

Koziy failed to inform the court that he desired to call Rene C. Martin, a handwriting consultant, until September 9, 1981. The trial commenced six days later. In November, 1980, the government notified Koziy of its desire to obtain handwriting exemplars for purposes of conducting an analysis and handwriting comparison of certain Nazi documents. Koziy refused, and the district court compelled him to comply. Koziy, therefore, knew that his handwriting was at issue in the case. His failure to obtain Rene C. Martin before the court's deadline displays bad faith.

Koziy contends that since the government had the opportunity to depose Martin, there was no unfair surprise. While the govern-

ment did depose Martin, an attorney who was not involved in the dispute took the deposition. The district court, therefore, did not abuse its discretion in excluding Martin as it would have resulted in an unfair surprise to the government. Our holding is supported by the district court's careful consideration of the issue before reaching a decision. It requested memoranda of law concerning the dispute and then precluded Koziy's witnesses from appearing.

IV. The Trial Court's Admission of the Anmeldung, the Abmeldung, and the Inimical list

(a) The anmeldung, the abmeldung

Koziy contends the court erred in admitting certain documents for various reasons. Koziy contends the anmeldung and the abmeldung lack proper authentication, are forgeries, are irrelevant and immaterial, and are hearsay. The government contends that the district court properly admitted the anmeldung and the abmeldung into evidence.

The Federal Rules of Evidence state that the requirement of authentication "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed.R.Evid. 901(a). A district court's determination that an article of evidence has been properly authenticated will not be overturned unless there is no competent evidence in the record to support it. *Bury v. Marietta Dodge,* 692 F.2d 1335, 1338 (11th Cir.1982); *Meadows and Walker Drilling Co. v. Phillips Petroleum Co.,* 417 F.2d 378, 382 (5th Cir.1969). The government produced two expert witnesses to authenticate the anmeldung and the abmeldung. The government produced Dr. Raul Hilberg, a renowned expert on the holocaust, and Dr. Cantu, an expert on written documents. Dr. Hilberg testified he had seen other anmeldungs and abmeldungs and that the ones involved in the present dispute were very similar to the ones he had seen. Dr. Cantu testified that the anmeldung and abmeldung were not executed after its purported date. These

two witnesses alone produced sufficient evidence to support the district court's authentication of the anmeldung and the abmeldung.

 The Federal Rules of Evidence, however, add support to the district court's finding that the anmeldung and the abmeldung were properly authenticated. Under Fed.R.Evid. 902(3), a document is self-authenticated if it purports

> to be executed or attested in his official capacity by a person authorized by the laws of a foreign country to make the execution or attestation, and accompanied by a final certification as to the genuineness of the signature and official position (A) of the executing or attesting person, or (B) of any foreign official whose certificate of genuineness of signature and official position relates to the execution or attestation or is in a chain of certificates of genuineness of signature and official position relating to the execution or attestation.

A Russian official authorized to authenticate such documents attested to the anmeldung and the abmeldung. These documents, therefore, were self authenticated under rule 902(3). Since there was competent evidence in the record to support the district court's finding that the anmeldung and the abmeldung were properly authenticated, the district court did not abuse its discretion by allowing them into evidence.

 Whether or not the anmeldung or the abmeldung were forgeries fails to go to their admissibility, but rather to the weight of the evidence. The documents are relevant and material. The documents are not inadmissible hearsay because they come within the ancient document's exception to the hearsay rule. Fed.R.Evid. 803(17). The documents were authenticated, and they have been in existence for twenty years or more.

### (b) Inimical list

 The district court admitted into evidence a list the DPC compiled containing all organizations hostile to the United States. Koziy contends that the government failed to show that the OUN was hostile to the United States at the time he applied for a visa, and therefore, the inimical list has no probative value. The Fifth Circuit has consistently held that evidence should be admitted rather than excluded if it has any probative value at all. *United States v. Holladay*, 566 F.2d 1018, 1020 (5th Cir.), *cert. denied*, 439 U.S. 831, 99 S.Ct. 108, 58 L.Ed.2d 125 (1978); *Sabatino v. Curtiss National Bank of Miami Springs*, 415 F.2d 632, 635–36 (5th Cir.1969), *cert. denied* 396 U.S. 1057, 90 S.Ct. 750, 24 L.Ed.2d 752 (1970). Doubts must be resolved in favor of admissibility. *Holladay*, at 1020; *Sabatino*, at 636. The inimical list had some probative value. The district court therefore properly allowed it into evidence. The amount of probative value the inimical list contains goes to the weight of the evidence, not to its admissibility.

### CONCLUSION

For the reasons stated above, we find that the district court committed no error in the proceedings. Accordingly, we affirm the order of the district court.

AFFIRMED.