**NOT FOR PUBLICATION**

# In the

# United States Court of Appeals

# For the Eleventh Circuit

———————————————

No. 24-13407

Non-Argument Calendar

———————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

LAZARO PRAT,

*Defendant-Appellant.*

———————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:21-cv-20547-DPG

———————————————

Before JILL PRYOR, BRASHER, and ANDERSON, Circuit Judges.

PER CURIAM:

Lazaro Prat appeals the district court's order revoking his naturalized citizenship for illegal procurement. He contends that the district court erred by finding that the government's claim was

not time-barred, erred by finding that he committed a crime involving moral turpitude during the statutory period before his naturalization, and erred by considering records from the Florida DMV.

## I.

We review a district court's ruling on a Rule 12(b)(6) motion *de novo*. *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).

Under 28 U.S.C. § 2462, the government may generally commence "an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise" so long as it is done "within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon." 28 U.S.C. § 2462. "A 'penalty' is a punishment, whether corporal or pecuniary, imposed and enforced by the State, for a crime or offense against its laws." *Kokesh v. S.E.C.*, 581 U.S. 455, 461 (2017) (citation modified).

Denaturalization "imposes no punishment upon an alien who has previously procured a certificate of citizenship by fraud or other illegal conduct. It simply deprives him of his ill-gotten privileges." *Johannessen v. United States*, 225 U.S. 227, 242 (1912). "Denaturalization is not imposed to penalize the alien for having falsified his application for citizenship; if it were, it would be a punishment. Rather, it is imposed in the exercise of the power to make rules for the naturalization of aliens." *Trop v. Dulles*, 356 U.S. 86, 98 (1958). The Supreme Court "has held that a denaturalization

action is a suit in equity." *Fedorenko v. United States*, 449 U.S. 490, 516 (1981). "Congress has not enacted a time bar applicable to proceedings to revoke citizenship procured by fraud." *Costello v. United States*, 365 U.S. 265, 283 (1961) (upholding a denaturalization proceeding initiated 27 years after the defendant naturalized); *see also United States v. Koziy*, 728 F.2d 1314, 1316 (11th Cir. 1984) (23 years); *Kungys v. United States*, 485 U.S. 759, 764 (1988) (28 years).

In *Kokesh*, the plaintiff was ordered by the district court to pay $34.9 million in disgorgement for securities violations that occurred more than five years before the SEC filed its suit. 581 U.S. at 460. The Supreme Court held that the disgorgement order constituted a "penalty" for the purposes of 28 U.S.C. § 2462. *Id.* at 463. It reasoned that SEC disgorgement is punitive in nature because it is intended to deter violations of public laws, is imposed for past misconduct, and is not always tied to compensating victims. *Id.* at 463-65. The Court explained that "[s]anctions imposed for the purpose of deterring infractions of public laws are inherently punitive because deterrence is not a legitimate nonpunitive governmental objective." *Id.* at 464 (citation modified).

Here, the district court did not err because § 2462 does not apply to civil denaturalization proceedings. The Supreme Court has repeatedly held that denaturalization is not a penalty or punitive in nature. *See Johannessen*, 225 U.S. at 242; *Trop*, 356 U.S. at 98; *Fedorenko*, 449 U.S. at 516. Historically, denaturalization proceedings have not been time-bound. *See Costello*, 365 U.S. at 283; *Koziy*, 728 F.2d at 1316; *Kungys*, 485 U.S. at 764. Prat's reliance on *Kokesh*

is thus misplaced because denaturalization proceedings are not imposed to deter others. *See* 581 U.S. at 464. Finally, the DOJ press releases are immaterial because they display the intent of the Executive—not the Legislature—and they do not transform a remedial action into a punitive one. *See Fedorenko*, 449 U.S. at 516. Accordingly, we affirm as to this issue.

## II.

We review *de novo* a judgment on the pleadings. *Samara v. Taylor*, 38 F.4th 141, 149 (11th Cir. 2022). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001).

The government must prove by clear, unequivocal, and convincing evidence that the defendant was not eligible for his naturalization when he obtained it. *Kungys*, 485 U.S. at 771-72. A district court must "enter[] a judgment of denaturalization against a naturalized citizen whose citizenship was procured illegally or by willful misrepresentation of material facts." *Fedorenko*, 449 U.S. at 517; *see* 8 U.S.C. § 1451(a). A lack of "strict compliance with all the congressionally imposed prerequisites to the acquisition of citizenship" will "render[] the certificate of citizenship illegally procured." *Fedorenko*, 449 U.S. at 506 (citation modified). Federal law requires that an applicant for naturalization be "a person of good moral character" from five years before filing his application up to the time she is granted citizenship. 8 U.S.C. § 1427(a). "No person shall be regarded as, or found to be, a person of good moral

character who, during the period for which good moral character is required to be established," committed one of the specified forms of misconduct, including "a crime involving moral turpitude." *Id.* §§ 1101(f)(3), 1182(a)(2)(A)(i)(I).

Although the term "moral turpitude" is not defined by statute, we have observed that such a crime involves "[a]n act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow men, or to society in general, contrary to the accepted and customary rule of right and duty between man and man." *Itani v. Ashcroft*, 298 F.3d 1213, 1215 (11th Cir. 2002) (citation modified). "Generally, a crime involving dishonesty or false statement is considered to be one involving moral turpitude." *Id.*

The categorical approach applies when determining if a past conviction qualifies for an immigration sanction, such as denaturalization. *George v. U.S. Att'y Gen.*, 953 F.3d 1300, 1303 (11th Cir. 2020). Under this approach, courts consider only the fact of conviction and the statutory elements of the offense—not the specific facts underlying the defendant's conviction. *Taylor v. United States*, 495 U.S. 575, 600 (1990). The categorical approach is used to determine whether a prior conviction categorically involved moral turpitude. *George*, 953 F.3d at 1303. "[I]f the . . . statute of conviction is indivisible—that is, if it defines only one crime with a single set of elements—we ask whether the least culpable conduct that the statute makes criminal qualifies as . . . a crime involving moral turpitude." *Id.*

6                    Opinion of the Court                    24-13407

"[T]he modified approach serves a limited function: It helps effectuate the categorical analysis when a divisible statute, listing potential offense elements in the alternative, renders opaque which element played a part in the defendant's conviction." *Descamps v. United States*, 570 U.S. 254, 260 (2013). Under the modified categorical approach, courts may consider the fact of conviction, the statutory elements of the offense, and a limited class of records called *Shepard* documents that relate to a defendant's prior convictions, including charging documents, plea agreements, plea-colloquy transcripts, and other comparable judicial records. *Gelin v. U.S. Att'y Gen.*, 837 F.3d 1236, 1241 (11th Cir. 2016); *Shepard v. United States*, 544 U.S. 13, 26 (2005). "The modified approach thus acts not as an exception, but instead as a tool. It retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime. And it preserves the categorical approach's basic method: comparing those elements with the generic offense's." *Descamps*, 570 U.S. at 263.

In *United States v. Dudley*, we held that a judge in a criminal case was limited to *Shephard*-approved documents when determining "whether a defendant's prior convictions were committed on different occasions from one another" for the purposes of a sentencing enhancement under the Armed Career Criminal Act. 5 F.4th 1249, 1259 (11th Cir. 2021).

In *Nijhawan v. Holder*, the Supreme Court addressed whether the $10,000 loss threshold for an "aggravated felony" involving fraud under 8 U.S.C. § 1101(a)(43)(M)(i) must be

determined categorically (based on the statute of conviction) or through a circumstance-specific approach. 557 U.S. 29, 33 (2009). Nijhawan had been convicted of conspiracy to commit fraud and was found removable due to a loss exceeding $100 million. *Id.* at 32-33. He argued that the court should only consider the statutory elements of his conviction, not the actual loss in his case. *Id.* at 35-36. The Court held that, while some aggravated felony definitions require a categorical approach, the loss amount under § 1101(a)(43)(M)(i) is to be assessed in a circumstance-specific manner. *Id.* at 36. The Court reasoned that, because the loss amount is not an element of the fraud offense itself, immigration judges may examine the facts underlying the conviction, including sentencing documents, to determine whether the $10,000 threshold is met. *Id.* at 42-43.

In *United States v. Lopez*, the government alleged that Lopez-Prat pled guilty to conspiracy to launder money. 75 F.4th 1337, 1341 (11th Cir. 2023). The district court found that she had thus committed a crime during her statutory period that categorically involved moral turpitude. *Id.* at 1340-41. We held that the conspiracy statute to which Lopez pleaded guilty was divisible, so the district court must use the modified categorical approach to isolate which underlying offenses the conspiracy covered. *Id.* at 1342-43. We explained that § 1956(h) is a conspiracy statute that incorporated various forms of money laundering. *Id.* at 1342-44. We also held that, even taking the least culpable conduct encompassed by those offenses, the offense did not categorically involve moral turpitude. *Id.* at 1345. We reasoned that the statute can be violated

without intent to defraud or knowledge that the money was the proceeds of unlawful activity, which undermined the government's position that it categorically involved moral turpitude. *Id.* at 1344-45.

To support a conviction for health care fraud under § 1347, the government must prove that the defendant "knowingly and willfully execute[d], or attempt[ed] to execute, a scheme or artifice—to (1) defraud a health care benefit program"; or "(2) to obtain, by false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program, in connection with the delivery of or payment for health care benefits, items, or services." 18 U.S.C. § 1347. To support a conviction for conspiracy to commit health care fraud, the government must prove that the defendant "attempt[ed] or conspire[d] to commit [health care fraud under § 1347], the commission of which was the object of the attempt or conspiracy." *Id.* § 1349.

An appellant fails to adequately brief a claim when he does not "plainly and prominently raise it." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (quotation marks omitted). An appellant abandons a claim when he "either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority." *Id.*

As an initial matter, the district court articulated the proper standard to find that Prat's conspiracy to commit health care fraud occurred during the statutory period: clear, unequivocal, and

convincing evidence. *Kungys*, 485 U.S. at 771-72.  The district court used "sufficient" merely to illustrate that the government produced "enough" to meet this evidentiary standard.  Also, Prat has abandoned any argument against the district court's finding that conspiracy to commit health care fraud categorically involved moral turpitude because he failed to raise it in his brief.  *Sapuppo*, 739 F.3d at 681.

Here, the district court did not err because the government demonstrated by clear, unequivocal, and convincing evidence that Prat engaged in a crime involving moral turpitude during the statutory period.  The *Shepard* documents in this case, such as the Factual Proffer, make this showing.  *See Shepard*, 544 U.S. at 26.  Prat admitted to conspiring to commit health care fraud.  Prat's statutory period was between April 29, 1997, and April 29, 2009.  The Factual Proffer demonstrates that he conspired to commit health care fraud during the statutory period.  8 U.S.C. §§ 1101(f)(3), 1182(a)(2)(A)(i)(I), 1427(a).  Prat's contention that the government misconstrued his admissions is wholly without merit.  He admitted that, at various points between 2004 and 2008, he owned and controlled three pharmacies and used them to submit false Medicare claims.  One of these pharmacies, Medline (which Prat specifically admitted he used to cause the submission of false and fraudulent claims), was incorporated in 2004 and dissolved in 2008, which means that the false and fraudulent claims that he admitted must have been committed during the relevant time frame to disqualify Prat.  In other words, Prat necessarily used Medline to submit false Medicare claims between 2004 and 2008.  Prat also admitted that,

"[f]rom about February 8, 2005, through July 29, 2008," he and Lopez-Prat obtained "approximately, $10,638,800 of reimbursement payments by Medicare," and Prat "knew that in excess of $7,000,000 of these funds were the proceeds of false and fraudulent claims on behalf of Medline." Moreover, the amended judgment noted that the health care fraud conspiracy ended on August 8, 2008.

The *Shepard* documents indisputably established that Prat committed health care fraud during the relevant statutory period before his naturalization, thereby satisfying the government's burden of proving that he unlawfully procured his naturalization due to lack of good moral character. Thus, the government did not need the DMV records that Prat also challenges. In any event, the district court did not err when it considered the DMV Records. Consideration of the DMV Records does not implicate the Sixth Amendment because the timing of when Prat conspired to commit health care fraud is a non-element fact. *See Nijhawan*, 557 U.S. at 34, 36. The DMV Records indicate that Lopez-Prat registered the Vehicle with the Florida DMV on January 24, 2006. In the Factual Proffer, Prat admitted that the Vehicle was purchased to help launder the proceeds from the false and fraudulent Medicare claims.[1]

For the foregoing reasons, the decision of the district court is

---

[1] Prat's reliance on *Lopez* is misplaced. The *Lopez* court did not address health care fraud or when the defendant's offenses occurred.

24-13407               Opinion of the Court                    11

**AFFIRMED.**