[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 7, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-14082

_____

D.C. Docket No. 04-00069-CV-1-KD-C

CYNTHIA MORRISSETTE-BROWN,

                                        Plaintiff-Appellant,

versus

MOBILE INFIRMARY MEDICAL CENTER,
Infirmary Healthcare Systems,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

**(November 7, 2007)**

Before MARCUS and PRYOR, Circuit Judges, and LAND,[*] District Judge.

---

[*] Honorable Clay D. Land, United States District Judge for the Middle District of
Georgia, sitting by designation.

MARCUS, Circuit Judge:

Cynthia Morrissette-Brown, a member of the Seventh-day Adventist Church, appeals the district court's entry of final judgment after a bench trial, in favor of her former employer, the Mobile Infirmary Medical Center, Infirmary Healthcare Systems ("Mobile Infirmary"), on her religious discrimination claim alleging a violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2. Morrissette-Brown asserted that she was terminated in February 2003 from her position as a unit secretary because her "deep religious convictions" as a Seventh-day Adventist prevented her from working any scheduled Friday or Saturday shift from 3:00 p.m. to 11:00 p.m. On appeal, Morrissette-Brown challenges the district court's factual findings: (1) that she was not terminated and was still employed by Mobile Infirmary after a meeting on February 24, 2003, and (2) that the hospital reasonably accommodated her religious beliefs and observances. After thorough review of the record, we affirm.

We review for clear error factual findings made by a district court after a bench trial. Holton v. City of Thomasville Sch. Dist., 425 F.3d 1325, 1350 (11th Cir. 2005); Fed. R. Civ. P. 52(a). "Clear error is a highly deferential standard of review." Holton, 425 F.3d at 1350. A factual finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence

2

is left with the definite and firm conviction that a mistake has been committed."

Id. (quoting Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985)).  In

Anderson, the Supreme Court explained that the clear error standard

> plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently. The reviewing court oversteps the bounds of its duty under Rule 52(a) if it undertakes to duplicate the role of the lower court. In applying the clearly erroneous standard to the findings of a district court sitting without a jury, appellate courts must constantly have in mind that their function is not to decide factual issues de novo. If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

Anderson, 470 U.S. at 573-74 (citation and quotation marks omitted).

Morrissette-Brown first challenges the district court's finding that after

being on an involuntary one-month leave of absence and attending a meeting with

William Stembridge, Director of Employee Relations for Mobile Infirmary, and

Laura Hobson, who was in charge of hiring unit secretaries, Morrissette-Brown

was not terminated but remained employed by Mobile Infirmary.  Both Stembridge

and Hobson testified about the meeting, which took place on February 24, 2003.

Although they recommended terminating Morrissette-Brown after the meeting,

they testified that she was not terminated because the appropriate personnel never

3

signed the necessary documentation.

In fact, the district court found as a fact that Morrissette-Brown was not terminated at this time, but instead was offered a flex certified nursing assistant ("CNA") position. As the district court found, Mobile Infirmary offered Morrissette-Brown the position "several times by telephone, but received no response." Moreover, Mobile Infirmary offered the position to Morrissette-Brown in several letters. A representative of the plaintiff's church, rather than the plaintiff herself, contacted Mobile Infirmary and requested that all further communication be made through the representative, but Morrissette-Brown, either herself or through the church representative, never responded to the flex CNA job offer.[1]

In addition to the testimony of Stembridge and Hobson, Mobile Infirmary presented evidence that after the February 24th meeting, Mobile Infirmary: (a) attempted to contact Morrissette-Brown via telephone on at least three occasions about the flex CNA opening, including once on the day of the meeting or the following day; (b) sent her numerous letters offering her the flex CNA position

---

[1] Although Morrissette-Brown asserts on appeal that Mobile Infirmary did not produce a company policy or procedure which would allow an individual to continue as an employee after being absent without notice from February 24 to July 15, as she was, the hospital in fact did introduce into evidence its leave-of-absence policy, which expressly permitted it to "plac[e] an employee on a system-initiated leave of absence." Moreover, Mobile Infirmary elicited testimony that, in accordance with this policy, Morrissette-Brown was placed on a "personal leave of absence" from February 24, 2003 until July 15, 2003, at which time the hospital determined that she had voluntarily resigned her position there.

4

and stating that she was still "active" in the system; (c) communicated and negotiated with a Seventh-day Adventist church leader about the flex CNA position; (d) made certain that she could take a refresher course for the flex CNA position; (e) continued to pay its portion of her health insurance premiums through May or June 2003; and (f) responded to the notice of her claim for unemployment benefits that she was "still employed" with the hospital.

On this ample record, we conclude that the district court's finding that Morrissette-Brown was not terminated on February 24, 2003 was plausible and did not constitute an impermissible view of the evidence, nor does the finding leave this Court with a definite and firm conviction that a mistake was committed. See Anderson, 470 U.S. at 573-74.[2] Morrissette-Brown has shown no clear error in the district court's factual finding as to when her employment was terminated.

Next Morrissette-Brown challenges the district court's determination that Mobile Infirmary reasonably accommodated her. As with all factual findings, a

---

[2] As for her argument that because she received unemployment benefits during the relevant time period, she had been terminated, under Alabama law, an individual may be entitled to unemployment benefits, even if employed, so long as he or she is not receiving any type of wages or compensation. See Ala. Code § 25-4-71 ("An individual shall be deemed totally unemployed in any week during which he performs no services and with respect to which no wages are payable . . . ."). Morrissette-Brown was on a personal leave of absence when she applied for and received unemployment benefits and thus was not receiving wages or compensation. Thus, under Alabama law, Morrissette-Brown was eligible for unemployment benefits, despite the fact that she was still employed by Mobile Infirmary.

district court's finding on an employer's reasonable accommodation under Title VII is subject to clear error. See Lake v. B.F. Goodrich Co., 837 F.2d 449, 451 (11th Cir. 1988) (holding that "[i]n Title VII cases the district court's findings on discrimination may not be reversed unless the court of appeals concludes that the findings are clearly erroneous," and concluding that the district court's findings regarding reasonable accommodation and undue hardship were "not clearly erroneous"). Even the parties agree that this determination is a factual finding subject to clear error, and many of our sister circuits have reached this same conclusion. See Redmond v. GAF Corp., 574 F.2d 897, 902-903 (7th Cir. 1978) ("Each case involving [a reasonable accommodation] determination necessarily depends upon its own facts and circumstances, and comes down to a determination of 'reasonableness' under the unique circumstances of the individual employer-employee relationship. . . . We conclude that the trial court's determination of the issue of 'accommodation' must be accepted unless it is 'clearly erroneous'. . . .") (citing Chrysler Corp. v. Mann, 561 F.2d 1282, 1286 (8th Cir. 1977); United States v. City of Albuquerque , 545 F.2d 110, 111 (10th Cir. 1976); Williams v. Southern U. Gas Co., 529 F.2d 483, 488-89 (10th Cir. 1976)); accord Riselay v. Secretary of Health and Human Services, 929 F.2d 701, *5 (Table) (6th Cir. 1991) ("the district court's determination on the issue of accommodation must be accepted unless it is

clearly erroneous"); Turpen v. Mo.-Kan.-Tex. R.R. Co., 736 F.2d 1022, 1026 (5th Cir. 1984) ("We must uphold the district court's factual determinations on the interlocking issues of 'reasonable accommodation' and 'undue hardship' unless they appear clearly erroneous."); Yott v. N. Am. Rockwell Corp., 602 F.2d 904, 908 (9th Cir. 1979) ("The conclusion that the proposal to transfer Yott to a position that did not require him to be a member of a union or pay union dues was an unreasonable accommodation is not clearly erroneous.").

A Title VII plaintiff must first establish a prima facie case of religious discrimination by "present[ing] evidence sufficient to prove that (1) he had a bona fide religious belief that conflicted with an employment requirement; (2) he informed his employer of his belief; and (3) he was discharged for failing to comply with the conflicting employment requirement." Beadle v. Hillsborough County Sheriff's Dep't, 29 F.3d 589, 592 n.5 (11th Cir. 1994) (citing Brener v. Diagnostic Ctr. Hosp., 671 F.2d 141, 144 (5th Cir. 1982)). With a prima facie case established, the burden shifts to the defendant to "demonstrate[] that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j); Beadle, 29 F.3d at 592. See also Anderson v.

7

U.S.F. Logistics (IMC), Inc., 274 F.3d 470, 475 (7th Cir. 2001).[3]

The phrase "reasonably accommodate" is "not defined within the language of Title VII." Beadle, 29 F.3d at 592. "Thus, the precise reach of the employer's obligation to its employee is unclear under the statute and must be determined on a case-by-case basis." Id. Nevertheless, the Supreme Court has explained that a reasonable accommodation is one that "eliminates the conflict between employment requirements and religious practices." Philbrook, 479 U.S. at 70. An employer is not required "to accommodate at all costs[,]" however. Id. As we have discussed:

> [C]ompliance with Title VII does not require an employer to give an employee a choice among several accommodations; nor is the employer required to demonstrate that alternative accommodations proposed by the employee constitute undue hardship. Rather, the inquiry ends when an employer shows that a reasonable accommodation was afforded the employee, regardless of whether that accommodation is one which the employee suggested.

Beadle, 29 F.3d at 592 (internal citations omitted).

In Trans World Airlines, Inc. v. Hardison, 432 U.S. 63 (1977), the Supreme Court confronted a situation where an employee, who had been terminated because

---

[3] Because Mobile Infirmary moved for judgment as a matter of law at the close of the plaintiff's case-in-chief, but the case was ultimately fully tried on the merits, we proceed directly to the question of whether the hospital's "proposed accommodation of [Morrissette-Brown's] religious practices comports with the statutory mandate of § 701(j)[,]" 42 U.S.C. § 2000e(j), without addressing whether she actually demonstrated a prima facie case. See Ansonia Bd. of Educ. v. Philbrook, 479 U.S. 60, 67-68 (1986).

8

his religious beliefs prevented him from working on Saturdays, claimed that the discharge violated the employer's duty to reasonably accommodate his religious beliefs. Id. at 67-69. The Supreme Court ultimately reversed the judgment in favor of the plaintiff, accepting the employer's argument that "all conceivable accommodations would result in undue hardship." Philbrook, 479 U.S. at 67 (citing Hardison, 432 U.S. 63). In that decision, however, the Supreme Court also discussed the "reasonable accommodation" prong of 42 U.S.C. § 2000e(j). According to the Supreme Court:

> It was essential to TWA's business to require Saturday and Sunday work from at least a few employees even though most employees preferred those days off. . . . In considering criteria to govern this allocation, TWA and the union had two alternatives: adopt a neutral system, such as seniority, a lottery, or rotating shifts; or allocate days off in accordance with the religious needs of its employees. TWA would have had to adopt the latter in order to assure Hardison and others like him of getting the days off necessary for strict observance of their religion, but it could have done so only at the expense of others who had strong, but perhaps nonreligious, reasons for not working on weekends. . . . Title VII does not contemplate such unequal treatment. . . . It would be anomalous to conclude that by "reasonable accommodation" Congress meant that an employer must deny the shift and job preference of some employees, as well as deprive them of their contractual rights, in order to accommodate or prefer the religious needs of others, and we conclude that Title VII does not require an employer to go that far.

Hardison, 432 U.S. at 80-81 (emphases added).

Relying on Hardison, we have held that, depending on the other facts of the

case, an employer may be able to satisfy the requirements of Title VII by permitting an employee to swap shifts with other employees in the context of a neutral rotating shift system. Beadle, 29 F.3d at 593. In Beadle, a panel of this Court thus found that an employer -- which allowed an employee to arrange shift swaps with his co-workers, provided him with an employee roster sheet that included all co-worker schedules, and allowed the employee to advertise his need for shift swaps during daily roll calls and on the department bulletin board -- made reasonable accommodations for the employee. In so holding, we also cited with approval the decision of United States v. City of Albuquerque, 545 F.2d 110 (10th Cir. 1976), which, as summarized by another panel of the Tenth Circuit, determined that:

> an employer had done all that was reasonably required under 42 U.S.C. § 2000e-2 once it had encouraged the employee to try to find another employee to swap shifts with him so that he could avoid working on Saturdays in violation of his religious beliefs. . . . [I]t would have been unreasonable to require the employer to go further and attempt to arrange a schedule swap for the plaintiff. We recognized the interactive and reciprocal duties inherent in a reasonableness analysis, and concluded that the employer had done all that was reasonably required of it when it was amenable to, and receptive to, efforts that the employee could have conducted for himself to arrange his own schedule swap.

Thomas v. Nat'l Ass'n of Letter Carriers, 225 F.3d 1149, 1157 (10th Cir. 2000) (emphases added).

Here, the district court's finding that Mobile Infirmary reasonably accommodated Morrissette-Brown's religious observances is factually and legally supported by the evidence and caselaw. As an initial matter, the evidence supports the district court's finding that Mobile Infirmary employed a seemingly neutral rotating system -- the hospital presented testimony that all full-time unit secretaries ordinarily worked three or four days during the work week, and alternated weekends, for a total of forty hours per week.[4] Within this system, Mobile Infirmary approved of all Morrissette-Brown's requests for shift swaps with respect to her scheduled Saturday shifts, and instructed her on numerous occasions to find someone with whom to swap her Friday night shifts. Furthermore, Hobson testified that Mobile Infirmary posted a master schedule of all employees' schedules in the nurses' station, and Morrissette-Brown could have used this schedule to find someone with whom to swap her scheduled Friday shifts. These steps alone likely constitute reasonable accommodations under Hardison and Beadle, despite the fact that Mobile Infirmary did not actively assist in

---

[4] Morrissette-Brown claims on appeal that the rotating system was not neutral because she was scheduled to work more Fridays after Mobile Infirmary learned of her religious conflict in October 2002 than she was scheduled in May 2002, when she accepted the position. But in support of her assertions, Morrissette-Brown only offers Hobson's testimony, which is unclear and not fully developed. For example, Morrissette-Brown's attorney never asked Hobson about Morrissette-Brown's schedule in May 2002. Without more, and given the undisputed evidence that Morrissette-Brown was scheduled for fewer Friday shifts immediately after the hospital learned of her religious conflict than she was scheduled immediately prior to that event, it appears that the rotating shift was, in fact, neutral. At the very least, the district court did not clearly err in finding that it was neutral.

11

coordinating other shift arrangements. See Thomas, 225 F.3d at 1157 (noting that,

in City of Albuquerque -- which this Court in Beadle cited with approval -- the

Tenth Circuit determined that "it would have been unreasonable to require the

employer to go further and attempt to arrange a schedule swap for the plaintiff").[5]

Moreover, as the district court plainly found, Mobile Infirmary made other

accommodations as well. Thus, for example, Mobile Infirmary did not terminate

or otherwise discipline Morrissette-Brown for a period of approximately three

months even though she continued to fail to come to work for her scheduled Friday

shifts. In addition, it encouraged Morrissette-Brown's transfer to another position

within Mobile Infirmary. It did so even though it had a requirement that an

employee work at least twelve months in a position before transferring to another

position. Further, Stembridge asked Morrissette-Brown to review the open-

positions list and to let him know which jobs she was interested in, and he would

do his "best" to process the requests and to secure interviews for the positions.

Although Morrissette-Brown subsequently applied for other positions in Mobile

---

[5] Rice v. U.S.F. Holland, Inc., 410 F. Supp. 2d 1301, 1310-12 (N.D. Ga. 2005), does not support Morrissette-Brown's argument. There, the court held that "a neutral seniority system of assigning work shifts, in and of itself, is not sufficient to satisfy the reasonable accommodation requirement." In denying an employer's summary judgment motion, it found that the employer "made absolutely no effort to find a solution to [the plaintiff's] conflict with his work schedule" and instead, by telling the plaintiff the employer would "take care of the problem" and not doing so, the employer's action was "in fact, worse for Plaintiff than if he had said nothing at all." This district court decision is factually distinguishable from the instant case -- most importantly, in no instance did Mobile Infirmary say it would arrange shift swaps for Morrissette-Brown and not do so.

12

Infirmary and was not successful, Stembridge explained that it was because she was not qualified for any of them, or because the position was closed and never filled.[6]

On this record, we cannot conclude that the district court clearly erred by finding that Mobile Infirmary offered reasonable accommodations to Morrissette-Brown's religious beliefs and observances during her employment. Morrissette-Brown has shown no clear error, based either on the district court's factual finding as to when her employment was terminated or on its reasonable accommodation finding. Accordingly, we affirm.[7]

---

[6] We note for completeness's sake that Mobile Infirmary also offered Morrissette-Brown yet another accommodation -- a position as a flex CNA -- immediately after the February 24, 2003 meeting, and thus, as discussed above, while she was still employed there. Had Morrissette-Brown accepted this position, she could have worked on Sundays, rather than on Fridays or Saturdays, to fulfill her weekend requirement; and while the position did not guarantee hours, she "easily" could have worked forty hours per week for the same amount of pay. Moreover, Morrissette-Brown was not even eligible at the time for a transfer, but Mobile Infirmary was willing to waive eligibility requirements and to provide her with refresher training for the position.

While the flex CNA position did not include benefits or health insurance, other courts have held that an employer's proposed "reasonable accommodation" may involve some cost to the employee. See Bruff v. N. Miss. Health Servs., Inc., 244 F.3d 495, 503 n.23 (5th Cir. 2001) (noting that "a significant reduction in salary" does not alone make an accommodation unreasonable); Eversley v. MBank Dallas, 843 F.2d 172, 176 (5th Cir. 1988) (where an employer offered an employee another job at a lower rate, the court held that "simply because the proposed accommodation would involve some cost to the employee does not make it unreasonable"). See also Philbrook, 479 U.S. at 68 ("[A]ny reasonable accommodation by the employer is sufficient. . . .") (emphasis added). Because we conclude that the steps taken by Mobile Infirmary described in the text above are sufficient to constitute a reasonable accommodation, we need not decide whether, and to what extent, an employer's reasonable accommodation may impose costs on the employee.

[7] "[W]here the employer has already reasonably accommodated the employee's religious needs, the statutory inquiry is at an end. The employer need not further show that each of the

13

**AFFIRMED.**

---

employee's alternative accommodations would result in an undue hardship." Philbrook, 479 U.S. at 68.  In this case, the district court expressly relied on the "reasonable accommodation" prong of 42 U.S.C. § 2000e(j) in finding for Mobile Infirmary, so it did not discuss the statute's "undue hardship" prong.  We need not do so either.