[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-17191
Non-Argument Calendar
_____

D.C. Docket No. 9:15-cv-81701-RLR


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILLIAM DOR,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 4, 2018)

Before WILLIAM PRYOR, ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

William Dor appeals *pro se* from the district court's grant of summary judgment in favor of the government in this action to revoke his naturalized United States citizenship. He argues that the district court erred in granting the government's motion for summary judgment because he never received notice or a copy of the motion, and the evidence did not show that he committed a crime during the critical time period that reflected adversely on his moral character. After careful review, we affirm the revocation of Dor's naturalized citizenship.

**I.**

Dor, a native of Haiti, was admitted to the United States in 2001 and became a lawful permanent resident as of February 2005. He applied for U.S. citizenship in April 2010 on the ground that he had been a lawful permanent resident for at least five years. His application was approved and, on July 28, 2010, Dor took the oath of allegiance and was admitted as a naturalized citizen of the United States.

In November 2011, Dor was arrested on a charge of fraud and misuse of visas, permits, and other documents, in violation of 18 U.S.C. § 1546(a). About a month later, a prosecutor filed an information charging Dor with conspiracy to produce identification documents without lawful authority, in violation of 18 U.S.C. § 1028(a)(1) and (f), "[f]rom in or around August, 2007, and continuing through on or about September, 2011." Dor agreed to plead guilty to the information under a written plea agreement. A magistrate judge conducted a plea

2

hearing.  During the hearing, Dor admitted that he was paid to complete and file fraudulent immigration petitions—specifically I-360 petitions for victims of domestic violence—for the purpose of helping others obtain Florida drivers' licenses.  Dor stipulated that "over 100 aliens were involved in the conspiracy." He was warned at the plea hearing that the offense may affect his citizenship because it was committed during the naturalization process.  Dor said that he understood.  The district court accepted Dor's plea in January 2012.  He was sentenced to 12 months plus one day of imprisonment.

In December 2015, the government filed a civil action to revoke Dor's citizenship on the ground that he had illegally procured his citizenship.[1]  *See* 8 U.S.C. § 1451(a).  The government alleged that he was barred from establishing the necessary "good moral character" under 8 U.S.C. § 1101(f) because during the period of time required by statute, he had committed unlawful acts reflecting adversely upon his moral character.  The statutory period, according to the government, ran from April 3, 2005, through July 28, 2010.

After the district court denied Dor's *pro se* motion to dismiss, the government moved for summary judgment.  In support of its motion, the government submitted numerous evidentiary materials, including documents and

---

[1] As an additional ground for revocation, the government alleged that Dor procured his naturalization by willfully misrepresenting or concealing the material fact of his criminal activity during the naturalization process.  The government did not move for summary judgment on that ground, though, so it is not directly at issue in this appeal.

transcripts from Dor's underlying criminal case as well as declarations from "co-conspirators" who reported purchasing fraudulent immigration documents from Dor as early as 2007.

Without receiving a timely response from Dor, the district court granted the government summary judgment. The court concluded that Dor had illegally procured his naturalization by committing unlawful activity, starting in 2007, which barred him from establishing the necessary good moral character for naturalization. The court set a compliance hearing for a month later at which Dor was expected to turn over his certificate of naturalization.

Post-judgment, Dor filed a timely notice of appeal in which he said that he never received the government's motion for summary judgment. After he did so, the government filed a notice confirming that its motion, which it mailed to Dor's address of record, had been returned as undeliverable.

Dor appeared for the compliance hearing on November 28 and surrendered his certificate of naturalization. At the hearing, the district court also addressed Dor's claimed lack of notice of the government's summary-judgment motion. The court explained that its docket report showed that, because Dor was a *pro se* litigant, the clerk's office had mailed an additional copy of the government's summary-judgment motion to Dor at his address. The court noted that the clerk's mailing had not been returned as undeliverable. Plus, the court added, Dor

received numerous other documents in the case at the same address.    After questioning Dor about these matters under oath, the district court found that Dor would have received a copy of the motion from the clerk's office.

## II.

Dor first argues that summary judgment was improper because he never received the government's motion or even notice that it was filed, so he did not have a chance to respond to the motion and explain his side of case.

We review the district court's factual findings for clear error and the court's interpretation of procedural rules *de novo*.  *United States v. Elmes*, 532 F.3d 1138, 1141 (11th Cir. 2008).  "Clear error is a highly deferential standard of review. *Morrissett-Brown v. Mobile Infirmary Med. Ctr.*, 506 F.3d 1317, 1319 (11th Cir. 2007) (quotation marks omitted).  "A factual finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (quotation marks omitted).  If the trial court's factual finding is plausible in light of the entire record, we may not disturb it even though we might have decided the matter differently had it been our call.  *Id.*

Here, the district court did not clearly err in finding that Dor received a copy of the government's motion for summary judgment from the clerk's office.  The court's factual finding that Dor received the motion is plausible in light of evidence

5

that (a) the clerk's office mailed a copy of the motion to Dor at his address, (b) that mailing was not returned as undeliverable, and (c) Dor received numerous other mailings at the same address. The court also questioned Dor in person about these matters at a hearing. While Dor maintains that he never received a copy of the motion and did not learn about it until after the court granted summary judgment, nothing in the record leaves us with a definite and firm conviction that the district court made a mistake in finding otherwise. *See id.*

Nor has Dor offered any reason to believe that, with sufficient notice, he could have responded with evidence sufficient to defeat the government's motion. For reasons we explain more fully below, the facts supporting Dor's denaturalization were not only undisputed, but largely could not have been disputed in light of his criminal conviction.

### III.

Dor next contends that the district court erred in granting summary judgment on the merits to the government. He argues that the government failed to prove that any criminal activity occurred before the date of his naturalization, July 28, 2010. He also asserts that the issue of "good moral character" is not appropriate for resolution at summary judgment.

We review *de novo* the district court's grant of summary judgment. *United States v. Jean-Baptiste*, 395 F.3d 1190, 1192 (11th Cir. 2005). Summary judgment

6

should be granted only when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a).

Naturalized citizenship is difficult to obtain and, once bestowed, "is no light trifle to be jeopardized." *Afroyim v. Rusk*, 387 U.S. 253, 267–68 (1967). If evidence later comes to light suggesting that citizenship was illegally procured, however, the government may file a civil action to revoke the citizenship of a naturalized citizen. *Jean-Baptiste*, 395 F.3d at 1192; *see* 8 U.S.C. § 1451(a). "But the government bears a heavy burden of proof in denaturalization proceedings, and a court should revoke citizenship only if the government presents 'clear, unequivocal, and convincing' evidence establishing that citizenship was illegally procured." *Jean-Baptiste*, 395 F.3d at 1192 (quoting *United States v. Koziy*, 728 F.2d 1314, 1318 (11th Cir. 1984)). If the government meets its heavy burden, the district court "must" revoke citizenship. *Id.*

"Citizenship is illegally procured if some statutory requirement which is a condition precedent to naturalization is absent at the time the petition is granted." *Koziy*, 728 F.2d at 1318 (quotation marks omitted). For an individual seeking naturalization based on residence, one such requirement is that the applicant establish good moral character during the statutory period—that is, "all the periods referred to" in 8 U.S.C. § 1427(a). *See* 8 C.F.R. § 316.10. The statutory period

7

includes "the five years immediately preceding the date of filing his application" and the period from "the date of the application up to the time of admission to citizenship." 8 U.S.C. § 1427(a). To be statutorily eligible for naturalization, therefore, Dor needed to maintain good moral character from April 2005, five years before his application was filed, until July 2010, when he took the oath of allegiance. *See id.*; *Jean-Baptiste*, 395 F.3d at 1192.

"Good moral character" is not statutorily defined. *See* 8 U.S.C. § 1101(f). Instead, the statute provides a non-exhaustive list of categories of persons who cannot establish good moral character and a "catch-all" provision stating that a person may lack good moral character for "other reasons." 8 U.S.C. § 1101(f). A regulation, 8 C.F.R. § 316.10, further defines what those "other reasons" might be. This regulation, too, has a catch-all provision, which provides that, absent "extenuating circumstances," applicants who have committed unlawful acts reflecting adversely on moral character during the statutory period cannot establish the requisite good moral character. 8 C.F.R. § 316.10(b)(3)(iii).

In *Jean-Baptiste*, we concluded that this regulation, 8 C.F.R. § 316.10, was entitled to deference under *Chevron*.[2] 395 F.3d at 1194. And based on the regulation, we held that an individual who *commits* an unlawful act adversely

---

[2] *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843–44 (1984) (describing that deference should be given to administrative interpretations of ambiguous statutes within the agency's purview).

reflecting on moral character during the statutory period cannot show good moral character, even if he was not indicted, arrested, or convicted until after naturalization. *Id.* at 1191, 1194.

Here, the government established by clear, unequivocal, and convincing evidence that Dor participated in a conspiracy to produce fraudulent identification documents during the statutory period, so he was precluded under 8 C.F.R. § 316.10(b)(3)(iii) from establishing the good moral character necessary to be naturalized as a U.S. citizen. *See Jean-Baptiste*, 395 F.3d at 1192–94. We therefore affirm the revocation of Dor's naturalized citizenship.

First, Dor committed unlawful acts that reflected adversely on his moral character. In general, crimes involving dishonesty, false statement, or fraud reflect adversely on moral character. *See Jordan v. De George*, 341 U.S. 223, 231 (1951) ("[C]rimes in which fraud was an ingredient have always been regarded as involving moral turpitude."); *Walker v. U.S. Att'y Gen.*, 783 F.3d 1226, 1229 (11th Cir. 2015) ("Because uttering a forged instrument involves deceit, we hold that it is a crime of moral turpitude."); *Itani v. Ashcroft*, 298 F.3d 1213, 1215 (11th Cir. 2002) ("Generally, a crime involving dishonesty or false statement is considered to be one involving moral turpitude."). In this case, the government's evidence showed that Dor accepted monetary payment to help prepare fraudulent Form I-360 petitions that were then used to procure Florida drivers' licenses. Dor

9

specifically pled guilty to violating 18 U.S.C. § 1028, which criminalizes fraud and related activity in connection with identification documents. *See* 18 U.S.C. § 1028. The elements of the crime and the facts of Dor's conduct unequivocally establish that the unlawful acts reflected adversely on his moral character.

Second, Dor committed these unlawful acts during the statutory period. While Dor correctly points out that he was not arrested or convicted until after the date of naturalization, that does not undermine the government's case. Our decision in *Jean-Baptiste* makes clear that an individual's citizenship may be revoked based on unlawful acts that were *committed* during the statutory period, even if the individual was not arrested, indicted, or convicted until after the date of naturalization. 395 F.3d at 1194; *see* 8 C.F.R. § 316.10(b)(3)(iii).

The government's evidence in this case clearly and unequivocally established that Dor's participation in the conspiracy existed back into 2007. While Dor did not admit to any specific conduct before August 2010, he admitted that the conspiracy lasted from August 2007 until September 2011. And the unrebutted declarations submitted by the government, combined with other evidence it submitted, convincingly establish that Dor's participation in the conspiracy began as early as 2007. In other words, Dor committed the unlawful acts during the statutory period.

10

Plus, in light of Dor's criminal conviction, he is collaterally estopped from denying his participation in the conspiracy from August 2007 to September 2011. *See Jean-Baptiste*, 395 F.3d at 1194–95. "Collateral estoppel bars a defendant who is convicted in a criminal trial from contesting his conviction in a subsequent civil action with respect to issues necessarily decided in the criminal trial." *Id.* at 1194. Collateral estoppel applies here because (1) the issue is identical to the one involved in the criminal case; (2) the issue was actually litigated in the prior action; (3) the determination of Dor's participation in the conspiracy in the criminal case was a critical and necessary part of the judgment in that action; and (4) the burden of persuasion in this action is not "significantly heavier" than the burden in the criminal case. *See id.* at 1195.

Finally, Dor has not identified any "extenuating circumstances" to palliate his guilt. *See* 8 C.F.R. § 316.10(b)(3)(iii). Extenuating circumstances in this context must relate to the individual's culpability for the crime and "the reasons showing lack of good character." *Jean-Baptiste*, 395 F.3d at 1195. Here, Dor's culpability for his crime was indisputable. He admitted he was guilty of participating in a fraudulent scheme that affected both the federal and Florida state governments. While he maintains that he is a person of good moral character who works hard to care for his family, that evidence does not pertain to his culpability for the criminal conduct and the specific "reasons showing lack of good character."

*See id.*  Accordingly, Dor has not presented any colorable basis for a finding of extenuating circumstances.

In sum, we conclude that the government established by clear, unequivocal, and convincing evidence that Dor illegally procured his citizenship under 8 C.F.R. § 316.10(b)(3)(iii).  *See* 8 U.S.C. § 1451(a).  Because Dor committed a fraud crime during the statutory period, as a matter of law, he lacked the good moral character necessary for naturalization.  *See Jean-Baptiste*, 395 F.3d at 1193–94.  And based on the undisputed facts in the record, the government was entitled to judgment, so the district court properly resolved this case on summary judgment without a jury trial.  *See id.* at 1196 (affirming the district court's grant of summary judgment in favor of the government and revoking the individual's naturalized U.S. citizenship).  In light of the government's proof, the court was required to order Dor's denaturalization.  *See id.*

Dor's remaining arguments are off the mark.  He relies on case law concerning the willful and knowing misrepresentation or concealment of a material fact during the naturalization process.  But we need not address that issue because the government did not rely on that ground at summary judgment.  Dor also cites some case law regarding issues of trademark infringement, but he fails to explain, and we cannot tell on our own, how these cases are relevant to this case.

For the reasons stated, we affirm the district court's grant of summary judgment in favor of the government.

**AFFIRMED.**