[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11251

_____

GLADE CREEK PARTNER, LLC,
c/o Sequatchie Holdings, LLC Tax Matters Partner,

Petitioner-Appellant,

*versus*

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee.

_____

Petition for Review of a Decision of the
U.S. Tax Court
Agency No. 22272-17

_____

Before NEWSOM, TJOFLAT, and ED CARNES, Circuit Judges.

PER CURIAM:

This case involves a tax dispute over a conservation easement.  The tax court determined that Glade Creek Partners, LLC, improperly claimed a charitable contribution tax deduction because it failed to ensure that the conservation purposes of an easement it had donated to a charitable organization were protected in perpetuity.  The court also found that Glade Creek owes a penalty for substantially misstating the value of the easement.  Glade Creek appeals.

## I.

International Land Co. (ILC) purchased almost 2,000 acres of undeveloped land in Tennessee for just over $9 million in 2006.  After initial residential development plans didn't entirely pan out, ILC sold what remained of the property to Hawks Bluff Investment Group, Inc., a corporation formed by two ILC members and James Vincent, a local real estate investor.  Hawks Bluff obtained ownership of the property along with all of ILC's debts.  Efforts to develop the land continued but still didn't pan out, and Vincent became worried about paying the debts the company had incurred.

Vincent heard that a conservation easement might help.  He spoke with Matthew Campbell, who was managing several companies that had donated conservation easements and was experienced in marketing companies to investors as tax savings

opportunities.  After talking to Campbell, Vincent decided that his financial problems would be solved by donating a conservation easement on part of the Hawks Bluff property to a charitable organization.

Campbell understood the purpose of the easement was to generate enough money to repay the Hawks Bluff debt.  He formed two new entities, Glade Creek Partners, LLC, and Sequatchie Holdings, LLC.  The plan was for Glade Creek to take control of the Hawks Bluff property and debt, and for Sequatchie to promote the conservation easement as an investment opportunity. Campbell would act as Glade Creek's manager, and he would sell Sequatchie in a private offering. Once the sale of it had raised enough money from investors to cover the Hawks Bluff debt, Sequatchie would purchase a majority membership interest in Glade Creek and grant the conservation easement on the land.  The investors would receive a significant charitable contribution tax deduction in return.  *See* I.R.C. § 170.

Campbell set the offering price for shares of Sequatchie without considering the property's fair market value, because he wanted to raise enough money to repay the Hawks Bluff debt, regardless of what the property was actually worth.  Campbell hired the professionals needed to complete the transaction, including lawyers, a brokerage firm, and two appraisers.  He told potential investors that the conservation easement would generate a total estimated charitable contribution deduction of $17.7 million, and that the more an investor invested, the larger portion of that

deduction the investor could claim.  The plan raised enough money to cover the Hawks Bluff debt, and Glade Creek donated the conservation easement to Atlantic Coast Conservancy, Inc.

When executing a deed of easement, Glade Creek included a provision addressing what would happen if it became impossible to use the property for conservation purposes.  The deed provided in that situation a court could terminate — or, in tax terms, "extinguish" — the easement, and the Conservancy would be entitled to a portion of the proceeds from any "subsequent sale or exchange of the property."  *See* Treas. Reg. § 1.170A-14(g)(6).  According to the deed, the Conservancy's portion of any extinguishment proceeds would be calculated using the easement's fair market value at the time of the sale "minus any increase in value" that was "attributable to improvements" made after the easement was granted. That amount attributed to improvements would not go to the Conservancy but  back to Glade Creek.

Glade Creek claimed a $17,504,000 charitable contribution deduction on its 2012 tax year return.  In 2017, the IRS issued Glade Creek a Final Partnership Administrative Adjustment (FPAA) based on that 2012 return.[1]  The IRS asserted that Glade Creek was not entitled to a charitable contribution deduction because of the

---

[1] An FPAA "is the functional equivalent of a Statutory Notice of Deficiency for individual taxpayers" and is issued when the IRS determines that a change — or, in tax terms, an "adjustment" — to a partnership tax return is required. *See United States v. Clarke*, 816 F.3d 1310, 1313 n.2 (11th Cir. 2016).

way that the conservation easement deed handled the possibility of any future extinguishment proceeds. The IRS also assessed a penalty against Glade Creek for misstating the value of the easement. Glade Creek petitioned the tax court for review — or, in tax terms, "readjustment" — of the FPAA. *See* I.R.C. §§ 6226, 6234.

After a three-day trial, the tax court concluded that Glade Creek had not properly taken the charitable contribution deduction. It also concluded that Glade Creek was subject to a penalty for substantially overstating the value of the easement. Glade Creek challenges both conclusions.[2]

## II.

Glade Creek challenges the tax court's conclusion that it improperly took the charitable contribution deduction. In reaching that conclusion, the court noted that to qualify for a charitable contribution deduction, the taxpayer must donate the easement "exclusively for conservation purposes" and those purposes must be "protected in perpetuity." I.R.C. § 170(h)(5)(A). The court explained that, to meet the in-perpetuity requirement, the regulation interpreting that part of the tax code requires the deed of easement to "account for the possibility of unexpected changes to the property that would undermine the continued use of the property for conservation purposes." *TOT Prop. Holdings, LLC v. Comm'r*, 1

---

[2] In addition, the tax court also addressed a cash donation deduction that Glade Creek claimed, but it ruled in favor of Glade Creek on that, and the IRS did not appeal that decision.

F.4th 1354, 1362 (11th Cir. 2021). The regulation requires a deed to account for that possibility because, if it were to occur, "judicial extinguishment" of the easement would be "required," and the donee of the easement "must receive a share of the proceeds determined by" a formula provided in the regulation. *Id.*; *see also* Treas. Reg. § 1.170A-14(g)(6)(ii).

The tax court noted that the formula "does not permit the value of any posteasement improvements to be subtracted out before determining the donee's share" of the proceeds. Because Glade Creek's deed did provide for subtracting the improvement value from the Conservancy's share of any future extinguishment proceeds, the tax court found that Glade Creek's donation violated the in-perpetuity requirement, which meant the charitable contribution deduction had been improperly claimed on its tax filing.

Glade Creek contends that the tax court erred when it disallowed the deduction for failure to satisfy I.R.C. § 170(h)(5)(A)'s in-perpetuity requirement. After Glade Creek filed its notice of appeal, we issued *Hewitt v. Comm'r*, 21 F.4th 1336 (11th Cir. 2021). In *Hewitt*, "we conclude[d] that the Commissioner's interpretation of [Treas. Reg.] § 1.1740A-14(g)(6)(ii) is arbitrary and capricious and violates the APA's procedural requirements." *Id.* at 1339. So *Hewitt* invalidated the regulation on which the tax court relied in disallowing Glade Creek's charitable contribution deduction. *See id.* We must follow *Hewitt*. *See, e.g., United States v. Bazantes*, 978 F.3d 1227, 1243–44 (11th Cir. 2020) ("Under the well-established prior panel precedent rule of this Circuit, the holding of the

first panel to address an issue is the law of this Circuit, thereby binding all subsequent panels unless and until the first panel's holding is overruled by the Court sitting en banc or by the Supreme Court.") (quotation marks omitted).  Accordingly, we will vacate that part of the tax court's judgment for reconsideration without reliance on the regulation.

The IRS advanced several other arguments before the tax court for why Glade Creek should not be allowed to claim a deduction for the conservation easement.  In light of our decision to vacate and remand because of our *Hewitt* decision, we need not address those other arguments and will leave them for decision by the tax court in the first instance.

## III.

Glade Creek also challenges the tax court's conclusion that it is subject to a penalty for substantially overstating the value of the easement.  That issue exists regardless of whether it properly claimed a deduction for the easement.  That's because the IRS imposes an "accuracy-related penalty" if "any portion of an underpayment of tax" in excess of $5,000 is "attributable to . . . [a]ny substantial valuation misstatement." I.R.C. § 6662(a), (b)(3), and (e)(2); *cf. Gustashaw v. Comm'r*, 696 F.3d 1124, 1136 (11th Cir. 2012) (holding that an overvaluation penalty should apply even when the value of the deduction is determined to be zero because the underlying transaction lacks any economic substance).

In reaching its conclusion that Glade Creek had substantially overstated the value of the claimed easement deduction, the tax court used what's called the "before-and-after" valuation method. That method calculates the fair market value of the easement by: (1) determining the fair market value of the property if put to its highest and best use (the "before" value); (2) determining the fair market value of the property once it is encumbered by the easement (the "after" value); and (3) subtracting the after value from the before value. *See* Treas. Reg. § 1.170A-14(h)(3)(ii).

To establish the before value, the court relied on Glade Creek's land-use expert, Richard Norton, and its valuation expert, Claud Clark III, who was also one of its appraisers. Norton testified that the property's highest and best use was for residential development, and he created a hypothetical housing development to illustrate that use. Norton's hypothetical housing development was a subdivision of single-family homes.

Clark determined that the value of the property's highest and best use was $17,314,049. To reach that number, Clark used Norton's hypothetical development and applied a "discounted cash flow" analysis to estimate the before value of the land. A discounted cash flow analysis is a method of estimating the present value of an investment. *See* John A. Bogdanski, *Federal Tax Valuation* ¶ 3.05(1)(a) (Thompson Reuters 2022); *see also Kuebler v. Vectren Corp.*, 13 F.4th 631, 639 (7th Cir. 2021) ("A discounted cash flow analysis estimates the present value of an investment based on future cash flows."). The analysis uses an interest rate — which is

sometimes called a discount rate — to reduce the value of the investment to its present value. Bogdanksi, *supra*, at ¶ 3.05(1)(a). That's necessary because the present value of an investment is less than the value the investor will eventually receive. *Id.*

As part of his analysis, Clark projected the gross revenues from Norton's hypothetical housing development. He also projected expenses for the development's sales period, and he increased those expense amounts by 15% to account for the developer's profit. He then subtracted the increased projected expenses from the projected gross revenue, producing a projected net revenue. Finally, he discounted the projected net revenue by 11.25% to "convert the future dollars to present day values."

The tax court accepted Norton's finding about what was the property's highest and best use. And the court largely agreed with Clark's valuation approach. But the court found an "error" in one "aspect" of Clark's "cost analysis": he had "deviated from industry practice by including profit as a line-item expense" instead of using a discount rate that already included "profit risk." That is, Clark had treated the theoretical developer's profit as a separate 15% expense and then applied an overall 11.25% discount rate when he should have applied an overall 26.25% discount rate without considering the developer's profit separately.

According to Clark's valuation report, his method applied a "combined" discount rate of 26.25% that he took from an industry-recognized quarterly survey of developers. But Clark's report also noted that, in the quarterly survey, discount rates for single-family

subdivisions like the one in Norton's hypothetical development already "include . . . developer's profit." Which means that for those kinds of developments, "profit is not treated as a line item expense" as it is in discount rates for other kinds of developments like condominiums. By separating profit into a line item expense, Clark had used the industry practice for condominium developments instead of the industry practice for single-family subdivisions.

As a result, the tax court concluded that Clark had not followed the correct industry practice — the one acknowledged in his own report — and that he had not satisfactorily explained his failure to follow that practice. The court then undertook its own calculation of the property's "before" value and, applying "a discount rate of 26.25%" to its own "computation of net revenues," found that value to be $9,353,171. (Far less than Clark's $17,314,049 before value.)

Moving on to the second step of the "before-and-after" method, the court relied on the IRS's concession to find that the property's "after" value was $476,400. The court then completed the method's third step by subtracting the after value ($476,400) from the before value ($9,353,171), resulting in the conclusion that the "easement's fair market value [was] $8,876,771."[3] Because

---

[3] The tax court initially concluded that the before value of the property was $9,354,171. But it later stated that the before value was $9,353,171. The court used the second number to calculate the fair market value of the property, which it found was $8,876,771. According to the court's calculations, the after value should be $8,877,771: ($9,354,171 - $476,400 = 8,877,771). The IRS

Glade Creek had claimed a deduction of $17,504,000, the court determined Glade Creek had overvalued the easement by more than 150% (which would have been $13,315,157) but less than 200% (which would have been $17,753,542). That amount of overvaluing, the court concluded, meant that Glade Creek owed a substantial valuation misstatement penalty. *See* I.R.C. § 6662.

The court also concluded that Glade Creek did not qualify for the "reasonable cause" exception to that penalty, which applies if "the claimed value of the property was based on a qualified appraisal made by a qualified appraiser" and the "taxpayer made a good faith investigation of the value of the contributed property." *See* I.R.C. § 6664(b)(3). The court found that the appraisers Glade Creek hired "determined the before value to achieve the tax savings goals of the easement transaction and did not attempt to accurately ascertain the easement's fair market value." It also found that Campbell, Glade Creek's manager, "did not make a good faith investigation into the easement's fair market value or rely on the appraisers in good faith to ascertain the easement's fair market value" because "Campbell knew that the easement was substantially overvalued" and "wanted an appraisal that accomplished his tax objectives for the easement transaction." On those findings, the court rested its determination that Glade Creek had not "acted

---

concedes that this "case should be remanded for the limited purpose" of correcting that error. The miscalculation does not impact the substantive issues before us, and we will REMAND this case with instructions to fix that scrivener's error.

with reasonable cause and in good faith in its valuation of the easement."

## A.

Glade Creek contends that the tax court erred by sustaining the substantial valuation misstatement penalty the IRS had imposed. It does not dispute that "[t]axpayers who underpay their taxes due to a 'valuation misstatement' may incur an accuracy-related penalty." *TOT Prop. Holdings*, 1 F.4th at 1368 (quotation marks omitted). Nor does Glade Creek contest that "[t]he degree of a misstatement determines the severity of the penalty." *Id.* at 1369. The applicable statute provides that if a taxpayer has misstated the value of its donated property by between 150% and 200% of the property's fair market value, "the IRS will assess a 20% penalty for a substantial valuation misstatement." *Id.* (quotation marks omitted).

As we've mentioned, "[t]he correct value of a conservation easement is the fair market value of it at the time of the contribution," which is "generally calculated based on sales prices of comparable easements." *Id.* (alteration adopted and quotation marks omitted). When comparable easements are not readily available, courts can apply the "before-and-after" method to determine the easement's fair market value. *Id.*; *see also* Treas. Reg. § 1.170A-14(h)(3)(i). "A determination of fair market value is a mixed question of fact and law: the factual premises are subject to a clearly erroneous standard while the legal conclusions are subject to *de*

novo review." *TOT Prop. Holdings*, 1 F.4th at 1368 (quotation marks omitted).

To calculate the before value of the property, courts must first determine the property's highest and best use. *Palmer Ranch Holdings Ltd. v. Comm'r*, 812 F.3d 982, 987 (11th Cir. 2016). The highest and best use of the property is one that is "reasonable and probable" and "supports the highest present value." *Id.* (quotation marks omitted); *see also* Treas. Reg. § 1.170A-14(h)(3)(ii).

Glade Creek's land-use expert testified that the property's highest and best use was for a residential development of single-family homes, and the tax court agreed. The court calculated the before value of the property if put to that use by applying a discount rate of 26.25%. It concluded that the property's before value was $9,354,171.

Glade Creek argues the court reached that value in error because it "*sua sponte* devised its own appraisal method." We disagree. The tax court and Clark (Glade Creek's valuation expert) both used the before-and-after method, which is the standard method for determining the value of an easement like the one here. *See TOT Prop. Holdings*, 1 F.4th at 1369; Treas. Reg. § 1.170A-14(h)(3). And they both applied a "discounted cashflow analysis," which included using a discount rate to reduce future dollars to present day values, to determine the before value of the property.

What Glade Creek characterizes as a legal challenge to the court's valuation method is actually a factual challenge to the tax

court's computation of the easement's fair market value. *See Est. of Jelke v. Comm'r*, 507 F.3d 1317, 1321 (11th Cir. 2007) ("The mathematical computation of fair market value is an issue of fact, but determination of the appropriate valuation method is an issue of law . . . .") (quotation marks omitted). Reframed in its proper light, we review Glade Creek's challenge only for clear error. *Palmer Ranch Holdings*, 812 F.3d at 993 ("We review the tax court's legal conclusions *de novo* and its findings of fact for clear error.").

Glade Creek asserts that the IRS had the burden to produce evidence that Glade Creek substantially overstated the easement's value, which the IRS did not meet, and that "there is *nothing* in the record to support" the tax court's "adjustments" to Clark's valuation. But there is plenty of evidence to support the determination that the easement's value was less than Clark said it was, including Clark's own report. That report expressly provided for the use of profit-inclusive discount rates when assessing single-family subdivisions, like Glade Creek's land-use expert used in his hypothetical housing development. And according to Clark's characterization in that report, his own method applied a combined discount rate of 26.25% that he took from an industry-recognized publication (though the tax court ultimately concluded that the "broken down" version Clark used — a 15% profit on expenses rate and an 11.25% discount rate — wasn't equivalent to an overall 26.25% discount rate). The tax court's valuation was based on that same data,

and it was not clear error for the court to apply a 26.25% discount rate in its calculation.

Glade Creek points out that the tax court did not rely on the IRS's expert, and the IRS later disclaimed its expert's testimony. But the tax court stated that it had determined the accuracy-related penalty issue "on the basis of the record and the preponderance of the evidence." Regardless of who initially bore the burden of production or who introduced the evidence in the record, that record evidence supports the tax court's findings.

That is why Glade Creek's reliance on *Estate of Elkins v. Commissioner*, 767 F.3d 443 (5th Cir. 2014), is unpersuasive. In that case, the tax court considered whether to apply a fractional-ownership discount when determining the taxable values of several works of art. *Id.* at 445. The court rejected the IRS's position that no discount applied but also rejected the petitioners' proposed discount amount. *Id.* The Fifth Circuit held that it was error for the tax court to "adopt and apply" its own discount amount "without any supporting evidence." *Id.* The only evidence in the *Elkins* record supported the petitioners' claimed discount amount, and there was "no viable factual or legal support" for the discount amount that the tax court applied. *Id.* at 450.

That is not so here. The record, including Clark's report, supports the tax court's valuation of the easement. And the court applied the before-and-after valuation method, which is the standard method used in these circumstances. The tax court is not required to accept Glade Creek's proposed before value or ignore

relevant evidence that undermines Glade Creek's valuation of the easement. We will not disturb the court's calculation of the easement's value unless "on the entire evidence [we are] left with the definite and firm conviction that a mistake has been committed." *Morrissette-Brown v. Mobile Infirmary Med. Ctr.*, 506 F.3d 1317, 1319 (11th Cir. 2007) (quotation marks omitted). After reviewing the entire record, we are not left with that conviction.[4]

### B.

Finally, Glade Creek contends that, even if it misstated the easement's value, no penalty should be imposed because of the reasonable cause exception in I.R.C. § 6664. A taxpayer can avoid a substantial valuation misstatement penalty by showing that "the claimed value of the property was based on a qualified appraisal made by a qualified appraiser" and that "in addition to obtaining such appraisal, the taxpayer made a good faith investigation of the value of the contributed property." I.R.C. § 6664(c)(3). Courts determine whether a company has exercised due diligence by looking at the actions of the company's manager. *See Stobie Creek Invs. LLC v. United States*, 608 F.3d 1366, 1380–83 (Fed. Cir. 2010).

---

[4] Glade Creek's brief lists several other tax court findings it says were wrong, but it makes only "passing references to those [findings], without advancing any arguments or citing any authorities to establish that they were error." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). As a result, Glade Creek has abandoned those issues. *Id.* at 681–83.

The tax court found that the appraisal was not done in good faith and that Campbell, Glade Creek's manager, did not make a good faith investigation of the easement's fair market value. Glade Creek argues that the tax court's finding is "unsupported and is contradicted by the record."

As Glade Creek admits in its brief to us, Campbell understood that the goal of creating the conservation easement "was to raise enough money to repay the outstanding debt and preserve the property." And as the tax court found, Campbell "wanted an appraisal that accomplished his tax objectives for the easement transaction." By pursuing that goal single-mindedly, he did not obtain the appraisal in good faith. The court did not clearly err in finding an absence of good faith.

Even assuming Campbell had obtained the appraisal in good faith, he was required to do more before Glade Creek could qualify for the reasonable cause exception. The exception also requires the taxpayer to make "a good faith investigation" into the property's value. I.R.C. § 6664(c)(3)(B); *see also Blau v. Comm'r*, 924 F.3d 1261, 1280 (D.C. Cir. 2019) (holding that the taxpayer had "failed to produce evidence that it conducted any investigation beyond the appraisal, let alone one that qualifies as a good faith investigation within the meaning of the statute") (quotation marks omitted); *Kaufman v. Comm'r*, 784 F.3d 56, 70 (1st Cir. 2015) (reasoning that if obtaining an appraisal were enough, it would "render the second requirement meaningless"). Glade Creek points to no evidence in the record that Campbell "made a good faith investigation" into

the property's value beyond obtaining the appraisals.  For this additional reason, the tax court did not clearly err in finding that Glade Creek failed to meet the requirements of the reasonable cause exception in § 6664.

## IV.

For the reasons discussed, we VACATE the tax court's ruling denying Glade Creek's claimed tax deduction and REMAND for further consideration of that issue consistent with this opinion. We AFFIRM the tax court's rulings on the substantial valuation misstatement penalty, except we VACATE the part of that ruling reflecting the scrivener's error discussed in footnote 3 of this opinion and REMAND it for the limited purpose of allowing the court to correct that scrivener's error.